THE LAKE SUPERIOR AND MISSISSIPPI RAILROAD COMPANY

*vs.*

MARY GREVE.

To support an exception to a charge which is abstractly correct, the party must show error in the application of the principle therein stated, on the part of the court or jury.

When there is no evidence to support the assumption upon which the instruction asked for proceeds, error cannot be assigned upon a refusal to give it as asked, though abstractly correct.

The appellant by a condemnation of land under its charter, (Spec. Laws of 1861, ch. 1,) acquires the right to the exclusive use of the whole thereof at any and all times thereafter, for the construction, maintenance, and operation

The Lake Superior and Mississippi Railroad Company v. Greve.

thereon of a railroad, with one or more lines of track, with all proper stations, depots, turn-outs, and all other appurtenances of a railroad.

The court gave the following instruction at the request of the appellant: "That the railroad company, in condemning property for railroad purposes, acquires an easement and right to use the property for the purposes for which it is condemned; that in assessing the compensation and damages to be paid to the appellant, (respondent here,) the same will be assessable upon the theory that the user will be perpetual, and the same compensation allowed as though the fee was absolutely taken; nevertheless the appellant, (respondent here,) as land owner, has the right to the use of the condemned property provided such use does not interfere with, or obstruct the use of the property for railroad purposes; hence, if the flowage of the water (supposed to be necessary to utilize a water power of respondent on that part of the land not taken,) along the side of the railroad embankment is in fact no damage or injury to the property, and does not in any wise affect the use of the condemned land for railroad purposes, such user is allowable;" but the court qualified this, in giving it, as follows: "that the right of defendant, (the appellant here,) to the use of land taken by this proceeding for railroad purposes, is absolute and exclusive; that it may cover such land with buildings, or put it to such other use as may be necessary to carry on its proper and legitimate business, and may exclude the occupancy and use of every one else. * * * In theory the law is that if the land taken by the railroad company was condemned and taken from the general property, he, the owner, would be entitled to the use of the land; but in practice that does not amount to anything. * * * In theory he has a right, but in practice he is at the mercy of the railroad company." *Held*, that the court did not err in thus qualifying the instruction aforesaid.

With respect to that part of the land not taken, as above mentioned, the jury were correctly instructed, that if the jury find that the taking (of the portion condemned) has injured the water power of the plaintiff, (the respondent here) they may assess full damages for the injury, as shown by the evidence.

The railroad company took three separate parcels, and the commissioners awarded a separate compensation for each. The land owner appealed from the award, and on the trial, the jury returned a sum in gross for the three tracts. The company did not object to the verdict at the time, and it did not appear that it had been, or could be injured by the fact that the verdict was not in detail. *Held*, that whether or not under said charter a verdict in gross can be legally returned, upon an appeal from such separate awards, nevertheless, under the above state of facts, an objection on the ground that such a verdict is illegal, cannot be raised in this court for the first time.

The appellant considering that the qualification aforesaid was a practical refusal of its instruction above stated, asked the court to instruct the jury as follows: That in the former condemnation in evidence, (viz.: a condemnation of a portion of respondent's said land lying northerly of this condemnation) the said alleged water power cannot be utilized without constructing the abutments of the dam upon land of the company, and using the company's land; that then, in such case, such portion of said power within said former condemnation is not to be allowed for in this case. All damages to which the party was entitled by reason of the taking of said premises, (described in said former proceedings) are to be taken as already allowed. *Held*, to be properly refused, because it charges the jury upon the matter of fact, that the power cannot be utilized without such use of the company's land, it not being either admitted or proved beyond dispute, that such a state of facts existed.

A witness called for respondent, was asked what was the value of this water power before the railroad company took the land, and what is its value now? An objection on the ground that the examination ought to be confined to the value of the portion not included in the compensation already made, was properly overruled, no evidence having as yet been introduced that a former condemnation had been had. If evidence thereof when afterwards given affected the question, the appellant might have requested the court to have the answer to said question stricken out.

The Lake Superior and Mississippi Railroad Company instituted proceedings under its charter to condemn certain lands for the use of its road, among others, lands owned by Mary Greve. She appealed from the award of the commissioners to the court of common pleas Ramsey county. Upon a trial before a jury they assessed her damages at a sum largely in excess of the previous award. The company appeals to this court from an order denying its motion for a new trial. The case is fully stated in the opinion of the court.

JAMES SMITH, JR., for Appellant.

BRISBIN & PALMER, for Respondent.

*By the Cou* .—RIPLEY, CH. J.—Upon proceedings taken by

the company to condemn three irregularly shaped pieces of land, described by metes and bounds, and referred to and designated in its petition as tracts A, D, and I, upon an annexed plan, the commissioners awarded as damages for the first tract $400, for the second $200, for the third $500.

The respondent appealed, and upon a trial of the appeal, the jury returned a verdict awarding her the gross sum of $10,000.

The company appeals to this court from the order of the court below denying its motion for a new trial, made upon the following grounds:

1. Excessive damages, appearing to have been given under the influence of passion and prejudice;

2. That the verdict is not justified by the evidence, and is contrary to law;

3. Error in law occurring at the trial, and excepted to.

The first ground is not urged. It is urged, however, that the erroneous rulings of the court, and refusals to charge as requested by the appellant, have induced a verdict excessive in amount.

It appears that the respondent was originally the owner of an irregularly shaped tract of land. The railroad was located through it, and by a former condemnation had taken a strip thirty-five feet wide on each side of the center line of such location, and thereby leaving the residue in three irregularly shaped parcels, viz.: two small tracts designated in this case as tract *D*, and tract *I*, aforesaid, on the west side, and the rest, constituting the third, on the east side of said seventy foot strip. From this third tract the present condemnation takes, tract A.

Under the first condemnation, the commissioners awarded five hundred dollars for said seventy foot strip, which was not appealed from, and had become final.

" It is palpable, (says the appellant,) that the commissioners under the first condemnation, must have taken into consideration the fact, as an element of compensation, that these tracts were so left irregular, and their value reduced; yet the court in its charge ignored the former proceeding, and instructed the jury, that 'it is obviously fair that the company should pay for any and all damages done to the property, as well as for the value of that which is taken; and if the shape of the portion which remains be irregular and inconvenient, causing damage, it would be proper for you to consider that fact in favor of the land owner.' This portion of the charge was duly excepted to, and we submit that the court erred, and by its charge has made the company pay twice for the same thing "

No objection can be made to the sentence quoted, in the abstract.

Unless the appellant can show error in the application of the principle therein stated, on the part of the court, or jury, the appellant's position is unfounded. This it has not done.

The whole of the paragraph quoted from is as follows: " In such cases as this, a party is entitled to a fair market value for property taken by a railroad company. As to the irregularity of shape of the property left, I do not think that has much to do with the case, and for this reason, if a piece of property is cut off by a railroad, for its own use, and without reference to the consent or convenience of the owner, it is obviously fair that the company should pay for any and all damage done to the property, as well as for the value of that which is taken; and if the shape of the portion which remains be irregular and inconvenient, causing damage, it would be proper for you to consider that fact in favor of the land owner."

This plainly has no application to tract D, or tract I, for the appellant took them all.

The Lake Superior and Mississippi Railroad Company v. Greve.

But tract A was carved out of the large tract on the east side of the railroad aforesaid, so as to leave that which was not taken, in an irregular shape.

It seems impossible but that the court must herein have referred to tract A, and that from which it was taken, and that the jury must have so understood it. It appears by the case, however, that the exception in question also covered what followed, namely, "If there be fifteen acres in a piece of property, and the railroad company takes an acre, they take it just as they please, without reference to its shape; and it would be unfair to take a portion of land worth $1,000 per acre, and then say that the portion so taken was not worth at that rate, because, (by your action,) its shape was irregular."

This refers to the value of the tract taken, and is correct in the abstract. It is applicable to tract A, which is taken in an irregular shape. It has no application whatever to D and I, the whole of which are taken, and which were irregular when taken, an irregularity resulting too from the former condemnation; whereas it would be unreasonable to say that the words "by your action," referred to any action of the company, other than the proceedings then under consideration.

"So (the charge proceeds and which is also covered by the exception,) in valuing these portions, you must consider them, not as irregular pieces, but as part of the whole, of which the value was so much per acre; they have taken it as they pleased; if the whole was worth $1,000 per acre, the part taken is worth at the same rate per acre. If the railroad company take land of but little comparative value, the principle would be just the same; as to irregularity of shape, the shape would not deliver it (sic) from its value, under such circumstances."

This again is correct in the abstract, and correct as applied to the portion A, and the portion of respondent's land from

which portion A was taken. It has no applicability to D and I, and it is not presumable, therefore, that the court or jury so applied it. If it be said that the language was open to that construction, because the words "in valuing these portions you must consider them, not as irregular pieces, but as part of the whole," &c., will include all three tracts, the answer is, that their natural application is to portion A, and that from which it is taken. It would scarcely occur to any one to speak of D and I as part of a whole, &c. But if the generality of the language was likely, in appellant's opinion, to mislead the jury, it should have asked for a more specific instruction in that regard.

The exception, as taken, is to what could raise at most but a surmise, that the jury might have been misled by the generality of the language specified, a surmise, however, which is without weight, in view of the fact, that D and I are separately described in the petition, and separately appraised by the commissioners, and all the witnesses at the trial. It is inconceivable, therefore, that the jury should have supposed that the court, in speaking of a whole from which the company had taken a part, referred to the property as it was before the first condemnation, and considered D and I as still part and parcel thereof.

The appellant requested the court to instruct the jury as follows :

"That the railroad company, in condemning property for railroad purposes, acquires an easement and right to use the property for the purposes for which it is condemned; that in assessing the compensation and damages to be paid to the appellant, (respondent here) the same will be assessable upon the theory that the user will be perpetual, and the same compensation allowed as though the fee was absolutely taken; nevertheless, the appellant, as land owner, has the right to the use

The.Lake Superior and Mississippi Railroad Company v. Greve.

of the condemned property, provided such use does not inter-fere with, or obstruct the use of the property for railroad pur-poses ; hence, if the flowage of the water along the side of the railroad embankment is in fact no damage or injury to the property, and does not in any wise affect the use of the con-demned land for railroad purposes, such user is allowable."

The user referred to, is the supposed flowage necessary in any improvement of a water power on respondent's land.

Taking the appellant's construction of the language of the court below to be correct, the court gave this instruc-tion qualified as follows: " that the right of defendant (the appellant here) to the use of land taken by this pro-ceeding for railroad purposes, is absolute and exclusive; that it may cover such land with buildings, or put it to such other use as may be necessary to carry on its proper and legitimate business ; and may exclude the occupancy and use of every one else.    *    *    In theory, the law is, that if the land taken by the railroad company was condemned and taken from the general property, he, the owner would be entitled to the use of the land ; but in practice, that does not amount to anything.    *    *    *    In theory he has a right, but in prac-tice he is at the mercy of the railroad company." ·

" In all this, (says the appellant) we submit that the court has manifestly mistaken the law of the case."

The argument is, that though the assessment of damages is to be on the theory that the use for railroad purposes will be perpetual, yet they are to be assessed with reference to the kind of use authorized ; that its charter contains no authority for acquiring the fee simple absolute ; an user for certain pur-poses only is authorized; the same rights, as to ownership, remain to the land owner as in case of an ordinary highway ; that the company acquired the right of way, merely, through those lands, and the right, of course. to raise its road bed ; to

grade and run its cars over the land appropriated, and acquired no further right; hence, it has the exclusive use for that purpose only. The jury, from the evidence, and their own actual view of the premises, should have found that the mere flowing back of the water upon the sides of the embankment, could not interfere with the use of the track laid upon the summit for railroad purposes; that, therefore, the improvement of the water ·power could not interfere with the user acquired ; yet the ruling of the court is such as to deprive the jury of the right to consider the question as to how far the power could be improved and used, and consequently compelled them to assess damages on the theory that the water power was wholly destroyed.

Assuming the correctness of appellant's view of its charter, all this obviously rests on the assumption, that the water power could be improved without interfering with the use of the track.

The instruction asked implies that it could be improved by merely flowing the water back along the side of the embankment, and proposes to leave it to the jury as to whether it could or not ; but whether it could be or not, the settled case furnishes us with no means of judging.

All that bears upon the point is the evidence of witnesses for the respondent, that the water power is gone unless the respondent has the right to use the embankment, not only, as we understand it, to flow back the water, but to rest one end of the mill dam upon it.

There is no evidence, whatever, that a pond along the side of the railroad track in this place, would not interfere in any way with the use of the road bed and track by the company ; and if the improvement involved the use of the embankment for a support to a mill dam and one side of the pond, it would seem that this would necessarily interfere with such free use.

One would naturally conclude, for instance, that it would be more difficult to repair a track one side of which is a mill pond, than one which had solid ground on both sides.

There being, therefore, no evidence in the case to support the assumption upon which the instruction asked proceeds, it was a mere abstract proposition, and error cannot be predicated on the refusal to give it as asked, though it be abstractly correct. We think, however, that the appellant's argument proceeds upon a misconstruction of its charter, special laws of 1861, ch 1.

By section two it is authorized to maintain, use and operate, and at pleasure to alter the line thereof, a railroad with one or more tracts or lines of rails, together with all proper stations, depots, turn-outs, and all other appurtenances and furniture of a railroad.

By section seven it shall have the right of way upon, and appropriate to its own use and control for the purposes of the said road and its appurtenances, land not exceeding two hundred feet in width, except in cases where a borrowing pit or waste bank is necessary for the construction thereof; in which cases such additional land may be appropriated by said company as may be necessary, and said company may by its engineers, agents and contractors, enter upon and take possession of and use all and singular any lands, timber, streams and materials of any and every kind for the purpose of making the survey and fixing the location of said railroad, and of all stations, depots, turnouts, and other things necessary, proper, or convenient for the same and the full use and protection thereof The state then grants to the company all land owned by the state within said limits, and by section eight it may take and hold for the said purposes or any of them, such additional land as may be requisite or convenient therefor; but unless given by or purchased from the owners, full and proper compensa-

tion therefor shall be made, to be ascertained as therein prescribed. Among other things, the court is to make an order appointing three commissioners to ascertain and determine the amount to be paid, by said corporation to each party interested, as compensation for his interest or estate in such parcel or parcels of land.

The commissioners are to take an oath, faithfully to ascertain and determine the compensation to be paid by the company to the respective claimants, for land, or interest in lands to be taken for the use of the company. Upon the payment to the party interested of the amount determined to be due him, the company shall become invested and seized of the title of the land, and entitled to full, free and perfect use and occupancy of the same, for the purposes aforesaid.

The right to the full, free and perfect use and occupancy of land, is certainly a right to the exclusive use of it. This company is therefore entitled, at all events, in perpetuity, to the exclusive use of this land, for the purposes aforesaid.

Those purposes are to construct, operate and maintain a railroad, with one or more lines of track, with all proper stations, depots, turn-outs, and all other appurtenances of a railroad.

The appellant is therefore mistaken in supposing that it could acquire under said charter only the right of way, and the right to raise its road bed to grade, and run its cars over the land. The land, it says, " is appropriated for its main track merely, as is shown by the plat, and fact of construction and operation."

The plat throws no light whatever on the subject, nor is there any evidence in the case, as to the manner of the construction and operation of the main track, tending to prove anything of the kind. Indeed the evidence of the respondent is directly opposed to such an assertion; for it appears therefrom, that at

the time of the trial, the company had already taken possession of tract A, and erected buildings on it. "The maching shop is partly on tract A. The blacksmith shop is wholly on it, and some others." Of course, however, it would be wholly immaterial, if the fact were so, that the company had at the time of the trial put the land to no other use than that of placing thereupon its main track, leaving a space which might be covered with water without interfering with the track.

Whatever the right and title acquired by the condemnation might be, it would not be acquired till judgment upon the verdict, (*Carli vs. Stillwater R. R.*, 16 *Minn.* 260,) and payment or deposit of the compensation awarded. *Sec. 8 of the company's charter*. Acts of the company previously done on the land in the construction and operation of a railroad, can have no effect, therefore, in determining the nature and extent of that right.

The right and title with which it is hereafter to be invested, the full, free and perfect occupancy to which it is hereafter to become entitled, is the right to an exclusive use of the whole of the tract taken, at any and all times hereafter, for all, or any of the purposes above mentioned. This will be as inconsistent in practical effect with a right in the land owner to flow the land, as a lease from him to the railroad company of the land for its purposes aforesaid, would be.

The instruction asked required the jury to give the respondent the full value of the fee simple of tract A. The charge actually given amounted to this, in respect of tract A. With respect to the tract left, it instructed the jury, that if the jury find that the taking of tract A has injured the water power of plaintiff, (respondent) they may assess full damages for such injury as shown by the evidence.

If the water power could not be used without flowing tract A, the jury must assess the owner's damages on the theory

that it was practically gone, for the company might, at any and all times occupy the whole of tract A for its purposes, to the exclusion of any such flowage, and the instruction would be correct.

It might well be asked in this connection, how the appellant reconciles its position, that this land· is ·appropriated for its main track, merely, and that the land .owner might flow all that was not covered by its present road-bed, without interfering with the rights acquired by the taking, and its request for an instruction, that if such flowage is in fact no damage or injury to the property, and does not affect the use of the condemned land for railroad purposes, such user is allowable, with the allegation in its petition, that said tracts "are necessarily and actually required for the proper construction and operation of said road, for necessary borrowing pits, side tracks, water tanks and stations, and approaches to and upon the line of said road, as now necessarily surveyed, located, and to be constructed; and that the said road cannot be *possibly* constructed or operated as its progress now demonstrates, without procuring for the use of the company all the said tracts."

If the company cannot construct and operate its road without using *all* this land,—what right of any practical importance would the land owner have left, consistent with the easement of the company therein ?

The next objection is, that the proceedings are erroneous, because the jury have returned a sum in gross, which cannot be legally done upon appeals from separate awards on separate parcels of property.

Whether it can be legally done under this charter or not, it is not necessary to determine. The appellant made no objection to the verdict at the time, and as it does not appear how it has been, or can be injured by the fact that it is not in detail,

the objection cannot be raised for the first time in this court. *Babcock vs. Sanborn*, 3 *Minn.* 141.

It alleges that it actually needs all the several tracts, and the judgment will give it what it needs, as effectually as if the verdict were in detail. *St. P. & S. C. R. R. v. Matthews*, 16 *Minn.* 341.

The appellant considering that the instruction asked as aforesaid was substantially refused, asked the court to instruct the jury as follows :

" That in the condemnation in evidence in the proceedings against Oliver Ames and others, from the northern limits of the present condemnation through such premises, the said alleged water power of appellant above that point cannot be utilized without constructing the abutments of the dam upon land of the company, and without flowing company's land; that then, in such case, said portion of said power within said former condemnation is not to be allowed for in this case, all damages to which the party was entitled by reason of the taking of said premises (described in said former proceedings) are to be taken as already allowed."

This was refused. In support of its exception to such refusal, the appellant urges that the instructions, as they stood, required the jury to assess damages for the whole water power, whereas a part thereof had been already taken.

It is a sufficient justification of the refusal to give the instruction requested, that it instructs the jury upon the matter of fact, that the alleged water power of respondent above the point named cannot be made use of without the use of land belonging to the appellant. The words "that then in such case," do not, and could not have been understood by the jury to leave it to them to decide the matter of fact. The instruction states the matter of fact, and then states the law applicable to " such case," that is, the case stated to exist.

Before the court could properly thus charge the jury, it must have been admitted or proved beyond dispute, that such a state of facts existed.

But the evidence discloses nothing whatever from which it can be inferred whether or not such a state of facts did exist. The proceedings referred to merely show that the appellant thereby took for its purpose a strip of land thirty-five feet wide on each side of its center line, which belonged to respondent, and of which land tracts D and I, and the tract from which A is taken were part, and part of which lies north of said tracts A, D and I. Nor can we discover anything else in the case upon which even an intelligent conjecture could be based as to what the water power, if any, of respondent's aforesaid tracts, required for its utilization.

The instructions as given were correct; as already remarked, they required the jury to assess damages for the value of the land taken, in whatever that value lies, and also that if there was a water power on respondent's land which was injured by the taking of tract A, that they should assess full damages for such injury as shown by the evidence.

A witness called for respondent was asked, "What was the value of this water power before the railroad company took the land in question, and what is the value now?" The appellant objected, on the ground, that the examination ought to be confined to the value of the portion not included in the compensation already made. The objection was overruled.

There was no evidence in the case when this question was put, respecting a former condemnation. The court was right, therefore, in overruling the objection, and if the former condemnation, when subsequently proved, affected the question, the appellant might have requested the court to have the evidence struck out.

The appellant urges in this court, that the question was im-

proper, because the time for assessing damages is the date of filing of the report of the commissioners.   This objection was not made below and cannot of course be considered here.

One ground of the motion for a new trial is, that the verdict is not justified by the evidence.   The appellant has not discussed the evidence with reference to this, and it is wholly unnecessary that we should do so, inasmuch as the settled case does not purport to contain all the evidence.

Order denying new trial affirmed.