Union Depot Co. v. Frederick.

117 138
117 117

117 138
118 324
118 328
118 490
120 35

117 138
122 386
125 66
125 584

117 138
130 301

117 138
67a 465

117 138
138 482
117 138
73a 122
117 138
149 101

117 138
168 8590

117 138
174 4305

## UNION DEPOT COMPANY v. FREDERICK, *et al., Plaintiffs in Error.*

### In Banc, June 19, 1893.

1. **Railroad Depot:** CONDEMNATION PROCEEDING: PARTIES. A petition in a condemnation proceeding of land for a railroad depot may under General Statutes, 1865 (Ch. 66, secs. 2 and 5), join therein residents and non-residents as parties plaintiff.

2. ———: ———: WAIVER OF PROCESS. Where a non-resident has twice appeared by attorney during the progress of such proceedings, the court acquires jurisdiction over him as fully as if he had been properly served with process.

3. ———: ———: JUDICIAL PROCEEDINGS. Condemnation proceedings under General Statutes, 1865 (Ch. 66, sec. 1 *et seq.*), to obtain land for a railroad depot, are judicial and not ministerial in their character.

4. ———: ———: COLLATERAL ATTACK: GENERAL JUDGMENT. While the statutory requirement in such proceeding for acquiring jurisdiction of the person and of the subject-matter must be strictly followed, yet when such jurisdiction is obtained, the judgment of condemnation imports the same verity, and is no more subject to collateral attack than is a judgment in a matter of general jurisdiction.

5. ———: ———: ———: ———. Such judgment is not void and subject to collateral attack because the damages to two separate parcels of land belonging to different owners were assessed in a gross sum instead of to each separate owner, as required by the statute.

6. ———: ———: PRESUMPTION. Where there are several owners of a parcel of land involved in the condemnation proceeding, it will be presumed in the absence of evidence to the contrary, that they were joint owners.

7. ———: ———. The commissioners may divide a condemned tract of land into two, and assess the damages to each owner separately, and the fact that one of such owners subsequently recovers in ejectment a portion of the land from another owner will not invalidate the condemnation proceeding.

8. ———: ———: CONSTITUTION. Constitution of 1875, article 2, section 21, provides that "the fee of land taken for railroad tracks without consent of the owner thereof shall remain in such owner subject to the use for which it is taken." *Held,* that conceding that this provision applies to land condemned for depot purposes under the acts of 1871 (Laws, pp. 60, 61), still an easement in the land will pass to the railroad, though the fee itself is condemned.

*Appeal from Jackson Circuit Court.*

AFFIRMED.

*Gage, Ladd & Small* for plaintiffs in error.

(1) The condemnation in controversy here can be collaterally attacked because the plain and positive provisions of the law were disregarded in the proceedings, in that a lump assessment was made of a tract of which Frederick only owned a part, and his part was not separately assessed. (2) The condemnation was utterly void because in violation of the constitution, in this, that no separate assessment was ever made of Frederick's land, and no compensation paid to him, or for his use for it. Whatever the statutory provision might have been, such a proceeding was unconstitutional and therefore void. *City v. Richfield*, 45 N. W. Rep. 129; *Railroad v. Sanford*, 23 Mich. 418; *Rusch v. Railroad*, 54 Wis. 136; *Brennan v. St. Paul*, 47 N. W. Rep. 55. (3) The position of defendant in error that the judgment of condemnation was not subject to collateral attack cannot be maintained because there was no judgment of condemnation. *Gray v. Railroad*, 81 Mo. 135. (4) The petition states that Frederick, Joy, the railroad company and the three trustees were all nonresidents. The law declares that it is only in cases where the parties are residents of the county that more than one owner can be proceeded against in the same proceeding. (sec. 5, chap. 66.) And this court has construed this provision of the statute to be mandatory. *Railroad v. Kellogg*, 54 Mo. 334; *Railroad v. Carter*, 85 Mo. 448. (5) When drawn in question, collateral proceedings for the condemnation of property for public use are strictly construed. *Ells v. Railroad*, 51 Mo. 200; *Whitely v. Platte Co.*, 73 Mo. 30; *Anderson v. Pemberton*, 89 Mo.

61.    (6) The act of March, 1871, authorized Union Depot companies to condemn lands in fee only and not merely the use.    The Constitution, art. 2, sec. 21, provides that the fee of land taken for railroad tracks without consent of the owner shall remain in such owner subject to the use for which it is taken.    The act of 1891, and the proceedings had under it were, therefore, unconstitutional and void. *De Camp v. Railroad*, 47 N. J. Law, 43; Commissioners of Amsterdam, 96 N. Y. 351; *Currier v. Railroad*, 11 Ohio St. 228; *Roanoke City v. Berkowitz*, 80 Va. 616.

*Pratt, Ferry & Hagerman* for defendant in error.

(1) Conceding that there was a joint assessment of separate tracts the judgment of condemnation was not subject to collateral attack because of such fact. *Gray v. Bowles*, 74 Mo. 419; *Brimmer v. Boston*, 102 Mass. 19; *Longfellow v. Quimby*, 29 Me. 196; *Young v. Sellars*, 106 Ind. 101, and *State v. Canterbury*, 28 N. H. 195, 223, 240; *Railroad v. Kellogg*, 54 Mo. 334, 338; *Railroad v. Carter*, 85 Mo. 448; *Railroad v. Baker*, 102 Mo. 553, 560; *Thompson v. Railroad*, 110 Mo. 147; *Railroad v. Greve*, 17 Minn. 322; *Knauft v. Railroad*, 22 Minn. 173, and *Railroad v. Boyer*, 13 Pa. St. 496.    (2) The rule recognized almost everywhere is this:    Where jurisdiction to act exists, then no error of decision nor any irregularity can in anywise collaterally affect the judgment.    Such a rule has been forcibly declared in condemnation cases in this state, and none other has been recognized until the opinion in this case was promulgated. *Evans v. Haefner*, 29 Mo. 141; *Quayle v. Railroad*, 63 Mo. 465, 471; *Thompson v. Railroad*, 110 Mo. 147; *Sedalia v. Railroad*, 17 Mo. App. 105.    (3) A misjoinder of parties is not a jurisdictional defect, nor one sufficient for the purposes of collateral attack.

*Railroad v. Kellogg*, 54 Mo. 334; *Railroad v. Carter*, 85 Mo. 448; *Thompson v. Railroad*, 110 Mo. 147; *Railroad v. Baker*, 102 Mo. 553. (4) The court concedes us that if there was a single tract of land with undivided, undetermined or even undescribed interests, a lump assessment would not be void. So say all the books. *Railroad v. Baker*, 102 Mo. 553; *Thompson v. Railroad*, 110 Mo. 147; *Railroad v. Wilson*, 45 Mo. App. 1; *Snoddy v. Pettis Co.*, 45 Mo. 361; *Railroad v. Christy*, 92 Ill. 337; *Railraod v. Benham*, 28 Mich. 459; *Railroad v. Alley*, 34 Mich. 16; *Railroad v. Barnes*, 44 Mich. 222; *Sherwood v. Railroad*, 21 Minn. 122; *McIntyre v. Railroad*, 26 N. J. Eq. 425; 1 Rorer on Railroads, 338. Such is the state of the record here.

MACFARLANE, J.—The suit is injunction to restrain defendant, Frederick, and his co-defendant, the sheriff, from executing a writ of possession against the Missouri River, Fort Scott and Gulf Railroad Company, for a certain parcel of land, for which defendant Frederick had obtained a judgment in ejectment against said railroad company. A demurrer to the petition was overruled, defendants declined to plead further, and a perpetual injunction was adjudged, to reverse which this writ of error is prosecuted. The question is, whether the petition states facts which entitle plaintiff to the relief granted.

The petition charges that in March, 1875, Frederick sued the said railroad company for the possession of a tract of land in Kansas City. On June 4, 1879, he recovered judgment, and the case was appealed to the supreme court, where the judgment was affirmed in 1884.

The plaintiff, Union Depot Company, is a corporation organized under the general laws of the state (Acts of 1871, pp. 59, 61) with power to maintain a

union depot at Kansas City. Pending the aforesaid ejectment suit, viz: April, 1877, plaintiff commenced condemnation proceedings to secure land for the depot; a portion of the land involved in the ejectment suit was included in the proceedings for condemnation. These proceedings resulted in the appointment of commissioners, a report of the commissioners assessing the damages and an order of the court approving and confirming the report, and the question here is whether the proceedings were sufficient to entitle the plaintiff to the use of the land in suit for its depot; if so, then the injunction was properly granted; if not, the judgment should be reversed.

The petition for condemnation was against the said Frederick, James F. Joy, said railroad company, Nathaniel Thayer, F.W. Palfrey and George W. Weld, trustees and others as defendants.

A tract of land called in the petition the second parcel was described, and the names of the owners given as follows:

"Beginning at a point on the east boundary line of Santa Fe street and two hundred and ten (210) feet south of the southeast corner of Santa Fe street and Union avenue; thence running south along said east line of Santa Fe street three hundred and seventeen (317) feet; thence east at right angles to said Santa Fe street ten (10) feet; thence northeasterly two hundred and fifty-three (253) feet, to a point in the west line of the northeast quarter of section six (6), township forty-nine (49), of range thirty-three (33), which point is one hundred and forty (140) feet south of the southeast corner of lot No. six (6), of block number forty-two (42), in Turner & Co's addition to the City of Kansas; thence north along said west line ninety (90) feet; and thence west and at right angles thereto one hundred and twenty (120) feet, to the place of beginning,

containing fifty-nine (59) one hundredth (59-100) of an acre more or less.

"That the names of the owners of said second parcel are as follows: Of that part of such parcel south of a line running east and west across the same fifty (50) feet north and parallel with the south line thereof, the Farmers' Loan and Trust Company, a corporation created and existing under the laws of the state of New York, trustee, and the Leavenworth, Lawrence & Galveston Railroad Company, a corporation created and existing under the laws of the state of Kansas; of the balance of such parcel north of said line across the parcel, James F. Joy, John B. Frederick, the Missouri River, Fort Scott and Gulf Railroad, a corporation created and existing under the laws of the state of Kansas, and Nathaniel Thayer, F. W. Palfrey and George W. Weld, trustees."

The petition charged that a number (naming them) of defendants were non-residents. The petition was presented to the circuit court, and June 28, 1877, was fixed as the time for hearing it. Timely summons was served on all resident defendants and notice by publication was duly given to non-resident defendants.

On June 28, 1877, the petition was heard by the court, Frederick appearing by attorney, and commissioners were thereupon appointed to assess the damages. The commissioners viewed the land and returned to the clerk a report of the damages allowed which was filed in July, 1877, and recorded by him.

The commissioners allowed $500 damages to the owners of the south fifty feet of the second parcel. About that tract none of the parties to this suit are concerned.

The remainder of that parcel the commissioners divided into two tracts and assessed the damage to the owners of the south one of them at $2937.34 and of the

one north at $2450.   The owners of each of these were
stated in the report to be Frederick, Joy, said Fort
Scott railroad and the three trustees, Thayer, Palfrey
and Weld.   Upon filing the report the amount of dam-
ages assessed was paid to the clerk.

The petition then charges that upon filing said
report the clerk duly notified all persons whose lands
were affected thereby, including said Frederick, of the
filing of said report and the payment to the clerk of
the damages.   No written exceptions were filed to the
report, by Frederick or any other defendant.   On the
25th day of July the report came on for final hearing,
before the court, said Frederick appearing by attorney,
and the same was approved and confirmed and the title
to the land therein described was by decree of court
vested in the Union Depot Company as owner thereof
in fee simple absolute.

The petition charges further that said tract of land
for which said commissioners allowed $2,937.34 covers
and includes a part of the land sued for by said
Frederick in said ejectment describing such part by
metes and bounds.   We are unable to determine from
the description of the two tracts whether or not one
includes a part of the other or how much, and will
take as true the allegation of the petition.

In division one of this court, an opinion was
delivered by SHERWOOD, C. J., upon certain questions
involved designated herein as paragraphs 1, 2, 3 and 5,
in which we fully concur.   That opinion on these ques-
tions is as follows:

"I. The condemnation proceedings, which are
spread forth at large in the petition of the plaintiff
corporation, form the only basis upon which the right
of that corporation to injunctive relief can be main-
tained; and the sufficiency of those proceedings is
questioned by the general demurrer filed.

"It becomes necessary, therefore, to examine those proceedings with care, in order to be able to reach a correct conclusion. Various grounds are stated to show that such proceedings did not conform to the law in such cases made and provided; and among them that Frederick, defendant, a non-resident, and yet joined with residents, is urged as being contrary to the statute, and fatal in its character. Chapter 66, General Statutes, 1865, pages 351 *et seq.*, was the one employed in condemning the land in question, for depot purposes. Section 5 of that chapter says:

'Any number of owners residents in the same county or circuit, may be joined in one petition, and the damages to each shall be separately assessed by the same commissioners.'

"Looking at that section alone, there might, perhaps, be plausible reason for the view taken in *Railroad v. Kellogg*, 54 Mo. 334, followed in *Railroad v. Carter*, 85 Mo. 448, that only residents of the same county or circuit could be joined in the same petition; but it does not do to confine one's attention to a single section of a statute; the whole enactment must be looked to, and when this is done, then determine what the meaning of each single section is when read with reference to its associate sections.

"Pursuing this course in this instance, it will be found that section 2 of the same law authorizes the inclusion in the same petition of both residents, non-residents and persons unknown. This being done, then, under the provisions of section 5, *supra*, only those whose interests lie within the county or circuit are to be made parties defendant. Believing this to be the correct view, we disapprove of the ruling in the cases mentioned, on the point in hand.

VOL. 117—10

"II. Further, we hold that Frederick, having twice appeared by attorney before the court during the condemnation proceedings, and having submitted himself to the jurisdiction of that court, this gave the court jurisdiction over him, as much so as if correctly served with process in the most unexceptionable manner. *Hilton v. St. Louis*, 99 Mo. *loc. cit.* 207.

"III. And in this connection it is well enough to say that proceedings had in the cause were judicial and not ministerial, as urged by counsel for defendant. *St. Joe, etc., Railroad v. Han., etc., Railroad*, 94 Mo. 535; *Railroad v. Story*, 96 Mo. 611; Lewis on Eminent Domain, sec. 614.

"The proceedings being judicial would doubtless bind and estop the defendant, speaking in a general way, just as much so perhaps as any other judicial proceeding. Whether the defendant was thus bound in this case is yet to be considered and determined."

IV. The statute (Revised Statutes, 1865, sec. 1 Ch. 66), requires that the petition shall set forth a description of the real estate which the company seeks to acquire and the names of the owners of the several parcels. But that it "shall not be necessary to make any persons party defendant in respect to their ownership, unless they are either in the actual possession of the premises to be affected, claiming title, or have a title to the premises, appearing of record upon the proper records of the county."

Section 5, among other provisions, contains the following: "And should more than one owner be included in the petition then the damages allowed each shall be stated separate."

Under similar statutory provisions in this and other states it is held that when there are several owners of one parcel of land, the presumption will be in the absence of any showing to the contrary, that they

are joint owners. In such case the assessment of one gross sum, as damages, for all the owners, has been approved. *Snoddy v. Pettis County,* 45 Mo. 361; *Railroad v. Christy,* 92 Ill. 337; *Watson v. Railroad,* 57 Wis. 332.

The statute authorizes the joining in the same petition of parties owning distinct tracts of land, and contemplates making all persons in possession of any tract parties to the proceeding though they may appear to have no claim or title of record. The construction, thus properly placed upon the foregoing provisions of the statute, is, that the damage to each tract or tracts specified in the petition as belonging to the same owner or owners shall be assessed separately. It is manifest that it was not intended that either the condemning corporation or the commissioners should determine the respective rights of the various claimants to the land or to the damages assessed. If the parties are not able to settle these rights among themselves they are left to have them adjusted by the court. *Railroad v. Baker,* 102 Mo. 553.

Here, it is insisted, the case is different, and that the commissioners assessed a round sum as damages to two several parcels of land belonging to different owners. Assuming this to be the case, it is insisted by Frederick that the proceedings, so far as they affected his land, in controversy in this suit, were absolutely null and void, and on the other hand the Depot Company insists that such an assessment is merely erroneous and not void, and cannot be questioned in this collateral proceeding.

It is conceded by both parties that if the proceedings are void they offer no barrier to Frederick's right to enforce his writ of possession and if merely irregular or erroneous, they constitute a complete bar, when interposed by the Depot Company.

Power is given the designated tribunal, that is, the court or judge in vacation, the commissioners and the clerk to accomplish two things, the appropriation of the land to the use of the Depot Company, and the assessment of damages in favor of the owners of the land so appropriated. The steps to be taken in the exercise of the jurisdiction are pointed out with particularity, not so much, perhaps, for the protection of the property owner as to expedite, cheapen, and simplify the proceedings. The owner of the land taken, is, under the constitution and laws, entitled to just compensation and undoubtedly every requirement of the law for securing this right should be rigidly followed. Yet when jurisdiction of the subject-matter and of the person has been obtained, no reason can be seen and we think none exists, why, when such proceedings are assailed collaterally, the same presumption and verity should not follow them as is extended to proceedings in matters of general jurisdiction. It is as important to the corporation that it should secure a certain and unassailable right to the use of the land, and to the land owner that his damages be conclusively established, as to any other litigants that their controversies should be fully and conclusively settled. So it is said in *Secombe v. Railroad*, 23 Wall. 119: "The judgment of condemnation in this case was rendered by a competent court, charged with a special statutory jurisdiction, and all the facts necessary to the exercise of this jurisdiction are shown to exist. A judgment thus obtained is no more subject to impeachment in a collateral proceeding than the judgment of any other court of exclusive jurisdiction."

It is said by the supreme court of Indiana, in a recent case: "When it affirmatively appears that a court of limited jurisdiction has, in a given case, acquired jurisdiction both of the subject-matter and of

the parties to the litigation, and that the judgment rendered is such as it might rightfully render in such a case, the same presumption of regularity attaches to its proceedings as to the proceedings of a court of general jurisdiction, and its judgments are alike unassailable by collateral attack." *Rassier v. Grimmer*, 28 N. E. Rep. 867.

On the same question the court of appeals of New York says: "'Whether the appraisers were freeholders or not was not enquirable into collaterally. The appointment had been made by an officer whose duty it was to have appointed freeholders and none other. If he erred in that particular, the appointment might have been examined in this court on *certiorari*, and, if illegally made, would have been set aside.' * * * The appointment of appraisers was a proceeding which could not be overhauled in a collateral proceeding." *Porter v. Purdy*, 29 N. Y. 108–109.

This is the general accepted doctrine of the courts of this country, as will be seen by examination of the following and other cases cited in brief of counsel. *State v. Rye*, 35 N. H. 377; *Clark v. Drain Comm'r*, 50 Mich. 620; *Gilkey v. Watertown*, 141 Mass. 319; *Hamilton v. Railroad*, 1 Md. Ch. 110; *State v. Kinney*, 39 Iowa, 227.

While this court has, in special proceedings, ever required great strictness in following all requirements of the statute in matters which are necessary to confer jurisdiction of the person, and of the subject-matter, yet, when jurisdiction is shown, it is held that the judgments rendered, whether by an inferior tribunal or a court of general jurisdiction acting under special law, "stand upon the same footing of unquestionable verity as do judgments of courts when exercising general jurisdiction. *Jefferies v. Wright*, 51 Mo. 22; *Evans v. Haefner*, 29 Mo. 141; *Maybe v. Railroad*, 63 Mo. 465;

*Gray v. Bowles,* 74 Mo. 421; *State v. Evans,* 83 Mo.
322; *Brown v. Walker,* 85 Mo. 263; *Hagerman v. Sutton,* 91 Mo 530; *Karnes v. Alexander,* 92 Mo. 671;
*Thompson v. Railroad,* 110 Mo. 147; *Lingo v. Burford,*
112 Mo. 149; *Railroad v. Baker,* 102 Mo. 533; *Musick v.
Railroad,* 114 Mo. 309.

In the case of *Railroad v. Baker, supra,* it was
shown that Baker owned several tracts of land. Upon
some of these Cook and Moberly held deeds of trust,
while Lighteren held one against other tracts. The
commissioners assessed the damage to these tracts separately, but on a trial in the circuit court the jury
awarded the damages in one sum to Baker. This court
held, on appeal by the railroad company, that the
mortgagees alone had the right to complain of the manner in which the assessment was made. The clear
implication of the court was that the assessment was
not void but merely irregular.

In the case of *Gray v. Bowles,* 78 Mo. 419, a
judgment of a justice foreclosing separate tax bills
against separate lots, charged the sum of all the bills
against all the lots. A sheriff's sale of the lots and
deed thereunder was held valid in a collateral attack.
To the same effect as in the *Baker case, supra,* are the
cases of *Railroad v. Boyer,* 13 Pa. St. 497; *Railroad v.
Greve,* 17 Minn. 322; and *Knauft v. Railroad,* 22 Minn.
173.

The cases of *Rusch v. Railroad,* 54 Wis. 136 and
*Brennan v. St. Paul,* 47 N. W. Rep. 55, assert the
doctrine that an assessment giving a gross sum as
damages for distinct tracts of land owned in severalty
by different persons would be void, but we do not
think these rulings in harmony with the spirit of the
decisions of this court, nor the doctrine generally
accepted in other jurisdictions.

It will be seen that the statute (chap. 66, G. S. 1865) as amended by the act of 1873, page 234, gives the circuit court, or judge in vacation complete jurisdiction over the condemnation of property for a union depot. This tribunal was given jurisdiction over this particular condemnation by the filing of the proper petition in court, and the proceedings, as stated in the petition of plaintiff show that Frederick was not only notified of the proceeding, but appeared thereto in court when the order was made appointing commissioners, and again when the report of the commissioners was confirmed. We have then a case in which the court had complete jurisdiction of the subject-matter and of the person, and, under the foregoing well established principles, the judgment, though both irregular and erroneous, is not void and cannot be questioned in this suit.

Moreover, upon an examination of the proceedings in the condemnation matter, we are unable to find that the commissioners committed the blunder they were accused of making. The petition, as we understand it, divided one tract into two parcels and gave the names of the owners of each. The commissioners divided the larger of these two parcels into two parts and assessed the damages to each, separately naming the same owners to each. We can see no injury that could have resulted to the owners on account of this mode of assessment and we think it was within the powers of the commissioners to proceed in that manner. It only gave the owners two judgments without increasing the amount allowed.

The fact that Frederick, one of the parties to the condemnation suit, afterwards recovered in ejectment a portion of the land from another party to the suit, cannot invalidate the whole proceedings. Indeed the statute expressly provides that all persons in possession

of the land may be made parties, thus contemplating possible conflicting claims to the land, and intending to relieve the condemning party of becoming involved in the controversies of the claimants. The Union Depot Company paid to the clerk of the court the damages assessed, as it was authorized to do, and was not concerned as to which of the parties interested might thereafter establish a right thereto. *Railroad v. Baker, supra.*

V. On the remaining question we also adopt the opinion of SHERWOOD, C. J., which is as follows:

"But one point remains to be considered, the constitutionality of the statutes. Session Acts 1871, pp. 60, 61, sec. 4. The fee in this case was condemned, and the claim is made that this section is opposed to the constitution of 1875, article 2, section 21, which provides that:

" 'The fee of land taken for railroad tracks without consent of the owner thereof shall remain in such owner, subject to the use for which it is taken.'

Section 4 of the act thus attacked reads as follows:

" " 'Every corporation formed under this act, in addition to the general powers conferred by the laws of this state in relation to corporations, shall have power: *First.* To take and hold for the purposes mentioned in this act such real estate as they may acquire either by conveyance to said corporations and such as it may acquire under the provisions of this act by condemnation. *Second.* To take, occupy and condemn any lands and real estate needed for the establishment of such union station or depot, and the same proceedings shall be had therefor as provided in chapter sixty-six (66) of the General Statutes, relating to the appropriation and valuation of land taken for telegraph, macadamized, graded, plank or railroad purposes, so far as applicable thereto, and when so condemned, the

said land and any interest therein shall belong to such corporation as owner thereof.'

"It will be at once observed that the constitution, in the provision quoted, is confined to "railroad tracks" alone, and does not in terms extend to lands condemned for *depot* purposes. The law on this point is stated by a text-writer heretofore quoted in this way:

" 'In the absence of any constitutional restraint, it rests with the legislature to say what interest or estate in lands shall be taken for public use. The whole matter thus being in the discretion of the legislature, it may authorize a fee to be taken, and necessarily may authorize any lesser estate or interest to be taken, according to its views of the requirements of the grantee and the demands of the public good.' Lewis on Eminent Domain, sec. 277.

"But, if it can be conceded that the constitution forbids the taking of the *fee* even for *depot* purposes, still, in such case, the condemnation proceedings would not necessarily be void on that account; an easement at law would pass, and so this point has been ruled in regard to a statute which authorized the acquisition of an *'absolute estate in fee simple'* in the land condemned."

BERRY, J., in reference to this subject, said:

" 'The plaintiff further argues that section 13 is unconstitutional, because it provides that under the proceedings for condemnation, the defendant shall acquire 'an absolute estate in fee simple' in the land condemned, whereas, it is entitled to acquire an easement only—"a franchise of way" in the language of our constitution, art. 10, sec. 4. The answer this position is that, if the defendant could not, by reason of any constitutional provision, acquire anything more than the easement, the effect of section 13 would be limited accordingly; and the defendant would be permitted to acquire not "an absolute estate in fee simple, "

but the easement only, the former, the greater, including the latter, the less.' *Scott v. Railroad*, 21 Minn. 322.

"Even when there was no such prohibition as now exists in our organic law, it was held that, notwithstanding the term 'fee simple' was used, yet, this was not to be taken in a technical sense, WAGNER, J., remarking:

"'It is true that in speaking of the title which the company acquire the legislature here uses the term "fee simple;" but did it contemplate a fee simple according to the technical legal meaning of that term? * * * The use is vested in the public, but the reversionary title still continues in the owner of the soil. In my opinion, notwithstanding the language used, nothing more than an easement passed to the road, giving it perpetual and continuous title so long as it used the land for the purpose for which it was taken, but when that use was abandoned, then it would revert to the owner of the premises.' *Kellogg v. Malin*, 50 Mo. 496."

Finding no error in the judgment of the circuit court, it is affirmed. BRACE, BARCLAY and GANTT, JJ., concur. BLACK, C. J., does not sit. SHERWOOD, J., dissents. BURGESS, J., concurs, with the exception of the fourth paragraph, from which he dissents.

BURGESS, J. *(dissenting)*.—I regret that I cannot concur in the majority opinion in this case, as to the fourth paragraph, and in addition to what has been said by SHERWOOD, J., in his dissenting opinion, to which I agree, I desire to give some additional reasons, which seem to me conclusive.

It has been uniformly held by this court that in condemnation proceedings, being in derogation of common law right, the utmost strictness is required, in order to give them validity; and that unless it appear from the face of the proceedings that every essential

pre-requisite of the statute conferring the authority be complied with every step will be *coram non judice*. *Ells v. Railroad*, 51 Mo. 200; *Cunningham v. Railroad*, 61 Mo. 33; *Blize v. Castlio*, 8 Mo. App. 290; *Anderson v. Pemberton*, 89 Mo. 67.

In the case of *Fore v. Hoke*, 48 Mo. App. 254, it was recently held by the St. Louis court of appeals, THOMPSON, J.; delivering the opinion of the court, that a judgment of condemnation is void, if the record fails to show affirmatively that the commissioners appointed to assess damages were freeholders, resident of the county, as required by the statute, but merely showed that the commissioners were householders resident in the county.

The proceedings to condemn the property of defendants were under chapter 66, General Statutes, 1865, pp. 351 *et seq.* And although they owned separate and distinct interests therein, damages were assessed in a lump, and not according, as I contend, to the express provisions of the statute. Section 1 of said statute provides that three disinterested commissioners shall be appointed to assess the damages which such owners may *severally sustain* in consequence of the establishment, erection, etc.; while section 5 provides that "Any number of owners, residents in the same county or circuit, may be joined in one petition, and the damages to each *shall be separately assessed*, by the same commissioners." In the absence of any assessment by the commissioners of the damages to each one of the parties whose property was sought to be condemned, how are such damages to be ascertained? Not by the court, because no such power is conferred upon it in cases of this kind. Suppose the commissioners had made no report or no assessment at all, the court or judge could have done nothing less than have appointed other commissioners. The defendants had the right to have

their damages severally assessed by the commissioners appointed by the court, or judge, for that purpose; and even after such commissioners had performed their duty the defendants had also the right, under section 21, article 2, and section 4, article 12 of the constitution, to have the amount of damages assessed by a jury. *Railroad v. Bates*, 109 Mo. 53; *Railroad v. Miller*, 106 Mo. 458.

The lumping assessment, in my opinion, was not a compliance with the statute, absolutely void and of no effect, and consequently subject to collateral attack. *Brennan v. St. Paul*, 47 N. W. Rep. 55; *Rusch v. Railroad*, 54 Wis. 136. There has never been a case decided that I have been able to find where a lumping assessment of damages in favor of persons owning different tracts of land, which were condemned for public purposes, has been held good, while the authorities herein cited hold to the contrary. SHERWOOD, J., concurs in the views herein expressed.

SHERWOOD, J. (*dissenting*).—The plaintiff corporation asked and obtained a perpetual injunction against Frederick, restraining him and his co-defendant, the sheriff, from having a writ of possession executed against the Missouri River, Fort Scott & Gulf Railroad Co., for a certain piece of ground for which Frederick had obtained judgment in ejectment in 1875, against said railroad company. In 1877, the Union Depot Co. was organized and had condemned, as it is claimed, a portion of the land thus recovered by Frederick, and upon the basis of these condemnation proceedings the injunctive relief was asked and obtained.

The case of plaintiff was presented by a petition which incorporated a recital of Frederick's suit and recovery of the land mentioned, and of the condemnation proceedings.

Frederick filed a general demurrer; but the court below held the petition sufficient, and refusing to plead further, a final decree was entered making the injunction perpetual, and upon this decree Frederick brought error.

I. The condemnation proceedings, spread forth at large in the petition of the plaintiff corporation, form the only basis upon which the right of that corporation to injunctive relief can be maintained; and the sufficiency of those proceedings is questioned by the general demurrer filed.

It becomes necessary, therefore, to examine those proceedings with care, in order to be able to reach a correct conclusion. Various grounds are stated to show that such proceedings did not conform to the law in such cases made and provided; and, among them, that Frederick, defendant, a non-resident, and yet joined with residents, is urged as being contrary to the statute, and fatal in its character. Chapter 66, General Statutes 1865, pp. 351 *et seq.*, was the one employed in condemning the land in question, for depot purposes. Section 5 of that chapter, says: "Any number of owners, residents in the same county or circuit, may be joined in one petition, and the damages to each shall be separately assessed by the same commissioners." Looking at that section alone, there might, perhaps, be plausible reason for the view taken in *Railroad v. Kellogg*, 54 Mo. 334, followed in *Railroad v. Carter*, 85 Mo. 448, that only residents of the same county or circuit could be joined in the same petition; but it does not do to confine one's attention to a single section of a statute; the whole enactment must be looked to, and when this is done then determine what the meaning of each single section is when read with reference to its associate sections.

Pursuing this course in this instance, it will be found that section 2 of the same law authorizes the inclusion in the same petition of both residents, non-residents and persons unknown. This being done, then under the provisions of section 5, *supra*, only those whose interests lie within the county or circuit, are to be made parties defendant. Believing this to be the correct view, we disapprove of the ruling in the cases mentioned, on the point in hand.

2. Further, we hold that Frederick having twice appeared by attorney before the court during the condemnation proceedings, and having submitted himself to the jurisdiction of that court, this gave the court jurisdiction over him, as much so as if correctly served with process in the most unexceptionable manner. *Hilton v. St. Louis*, 99 Mo. *loc. cit.* 207.

3. And in this connection, it is well enough to say that proceedings had in the cause were *judicial* and not *ministerial* as urged by counsel for defendant. *St. Joe etc. Railroad v. Hannibal etc. Railroad*, 94 Mo. 535; *Railroad v. Story*, 96 Mo. 611; Lewis on Eminent Domain, sec. 614.

The proceedings being judicial would doubtless bind and estop the defendant, speaking in a general way, just as much so perhaps as any other judicial proceeding. Whether the defendant was thus bound in this case, is yet to be considered and determined.

4. The statute above mentioned which controls the present litigation, provides, among other things: "And should more than one owner be included in the petition, then the damages allowed each shall be stated separately." Sec. 5.

If the record discloses that there is but one tract of land, and several owners, or if the petition allege several owners and but one tract of land, the presumption seems to be in the absence of anything to the contrary

appearing, that they are joint owners. *Snoddy v. Pettis Co.*, 45 Mo. 361; but where two or more tracts of land belonging to different persons, are embraced in one petition, it is an absolute necessity that there should be a separate assessment for each tract. This point has been so ruled in Illinois under statutory provisions similar to ours. *Railroad v. Christy*, 92 Ill. 337.

Here, however, the case is different. At the very outset of the petition, Frederick is described as the owner of a certain tract of land, giving its description by metes and bounds, and the allegation is then made that he had recovered that land in an ejectment suit, and that his co-defendant Hope, the sheriff, was about to put him in possession of the land thus gained in the action of ejectment; a writ of possession having been issued for that purpose. Then the allegation is made that the plaintiff corporation prior to the issuance of the writ of *habere facias*, had the land in question, or at least a part of it, condemned for depot purposes. But when the petition comes to give a description of the land of Frederick, aforesaid, *there is no intimation that he had sold any part or interest in it to any one else;* on the contrary, the theory of plaintiff's petition, directed as it is against Frederick alone, is that up to the time the condemnation proceedings were had, he continued to be the owner of all the land for which he sued in ejectment. But this tract of land or a portion of it, by the report of the commissioners is strangely blended with another tract or tracts alleged to belong to Frederick and others, and the whole body of land formed by jumbling these tracts together, is thereupon by the commissioners assessed at the gross sum of $2937 34-100, and that sum as well as other sums aggregating nearly $50,000 was by the plaintiff corporation paid to the clerk for the use etc.; but it is not alleged that Frederick had ever accepted any por-

tion of said sum thus assessed; and it is difficult to see how or in what way he could demand any particular portion of the gross sum so assessed. This incident demonstrates the practical wisdom of the law which the commissioners failed to observe.

It has been the repeated and continuous language of this court whenever speaking on the subject of the exercise of the right of eminent domain, that everything is essential which the law requires to be done; that the power to take property for public use is a power summary in its method and harsh in its nature; in short a proceeding *in invitum*; that this power being in derogation of the rights of the citizen, only finds justification on the grounds of absolute necessity; that no presumptions are indulged in its favor, and consequently it must affirmatively appear on the face of the record that every thing required by the constitution and the law to be done, has been done, before the property of the citizen passes into the dead hands of the condemning corporation; otherwise those proceedings will be void. *Shaffner v. City*, 31 Mo. 264; *Leslie v. St. Louis*, 47 Mo. 447; *Ells v. Railroad*, 51 Mo. 200; *Whitely v. Platte Co.*, 73 Mo. 30; *Anderson v. Pemberton*, 89 Mo. 61; *City v. Gleason*, 89 Mo. 67; *Railroad v. Young* 96 Mo. 39.

Treating of this point, an eminent jurist observes: "When, however, action is had for this purpose, there must be kept in view that general, as well as reasonable and just rule, that, whenever in pursuance of law the property of an individual is to be divested by proceedings against his will, a strict compliance must be had with all the provisions of law which are made for his protection and benefit, or the proceeding will be ineffectual. Those provisions must be regarded as in the nature of conditions precedent, which are not only to be observed and complied with before the right of

the property owner is disturbed, but the party claiming authority under the adverse proceeding must show affirmatively such compliance. For example, if by a statute prescribing the mode of exercising the right of eminent domain, the damages to be assessed in favor of the property owner for the taking of his land are to be so ᵃassessed by disinterested freeholders of the municipality, the proceedings will be ineffectual, unless they show on their face that the appraisers were such freeholders and inhabitants." Cooley on Constitutional Limitations [6 Ed.], 648, 649 and cases cited.

In *Railroad v. Sanford*, 23 Mich. 427, the court says: "No one can fail to observe that a verdict giving a round sum as damages for a continuous strip of land crossing several parcels, does not accomplish anything whatever concerning the rights of the several owners. * * * Unless each separate holding is viewed by itself, the owner's rights cannot be protected at all. * * * No man can be compelled to have his property exposed to such dealing. * * * He is interested in none but his own, and has a right to have his own rights passed upon and protected. He can not be compelled to yield up a right-of-way * * * until his compensation has been fixed. This can only be done separately, or at all events, by separate parcels. *Rex v. Croke,* Cowp. 26; *Rex v. Manning,* 1 Burr. 377 [page 428]. * * * And the result is that the verdict [which was a lump sum for several parcels], * * * has made no finding at all on the rights of the party appealing. The whole proceedings, so far as they concern the appellant, must be squashed, and if the company desire to obtain a condemnation of his land, they must commence new ones." This case was subsequently approved in *City of Owosso v. Richfield,* 45 N. W. Rep. 129.

VOL. 117—11

A recent author of recognized merit, in discussing the subject now under discussion says: "The jurisdiction exercised in condemnation cases is always of a special character. The proceedings are to be conducted according to a certain *prescribed mode.* It is plain, therefore, that, even after the court or tribunal has acquired jurisdiction in the case, errors may be committed which will render the proceedings void. The jurisdiction acquired is simply a jurisdiction to proceed to a final determination of the case *in the mode provided by law.* Any material departure from that mode will be fatal to the proceedings." Lewis on Eminent Domain, sec. 603.

In *Rusch v. Railroad,* 54 Wis. 136, there had been a judicial proceeding instituted in the circuit court to condemn land owned in severalty by Rusch and five others, and the proceedings appear to have been regular in every respect except that the commissioners awarded a gross sum as a compensation to all such owners, without specifying the sum to which each was entitled; the railway paid into court the sum so awarded and the railway company located its road on the lands and operated its road *thereon.* Sometime thereafter, Rusch brought trespass against the railway company, and recovered judgment in the lower court, which was affirmed in the supreme court, solely upon the neglect of the commissioners as aforesaid. In that case it was earnestly contended that as the proceedings to condemn were a suit in court which had jurisdiction of subject-matter and person, that the right of Rusch was barred thereby. Speaking with reference to this state of affairs, LYON, J., said: "It is not denied that the award of the commissioners in the condemnation proceedings fails to ascertain the compensation to which the plaintiff is entitled for his land which the defendant proposed to condemn to its use. The aggregate sum

only to which six owners in severalty were entitled was ascertained, and no rule is given and none exists by which the proportionate share of each can be ascertained. * * * Speaking no word and doing no act from which consent can reasonably be inferred, he might proceed to recover his damages or land at his leisure, within the limitations of the statute. * * * We think, and so hold, that the condemnation proceedings are at an end, and that, because they resulted in an award which fixed no rights and bound no one, they have ceased to have any effect for any purpose whatever, and the rights and liabilities of the parties are the same as though the proceedings had not been instituted."

This case was afterwards approved by that of *Watson v. Railroad*, 57 Wis. 332, but the latter case was distinguished from the former on the ground that the latter was one where a single parcel of land was owned by a number of tenants in common, and it was held proper to make but one aggregate award of damages for the whole tract.

In *Brennan v. St. Paul*, 47 N. W. Rep. 55, the supreme court of Minnesota made a similar ruling, holding an assessment in gross of lots held in severalty, void, although the board had acquired jurisdiction, etc.

The case of *Railroad v. Greve*, 17 Minn. 322, was one where Greve owned three tracts of land, which on appeal to the common pleas court were appraised at a gross sum, but the *condemning corporation* at the time the verdict came in made no objection, and it was held on appeal by the *corporation*, that such objection could not be taken in the appellate court for the first time. The court treated it as a mere *question of practice*, and refused to otherwise consider it. The like line of remark applies to the case of *Knauft v. Railroad*, 22

Minn. 173, where there were several owners of several tracts, and one award in gross for all of the tracts. The land owners did not appeal; but the corporation did, and no objection being taken by the corporation to the verdict when it came in, a similar ruling, as in the former case was made.

Collateral attacks on judgments or proceedings of condemnation, where jurisdiction has been fully acquired by the court or tribunal, are not at all infrequent. Thus, in our own state we have the case of *Shaffner v. City, supra;* and in other states the following: *Inhabitants v. Abell,* 127 Mass. 507; *Wilson v. Lynn,* 119 Mass. 174; *McKernan v. Indianapolis,* 38 Ind. 223; *Pratt v. People,* 13 Hun 664; *Nichols v. Bridgeport,* 23 Conn. 189; *Judson v. Bridgeport,* 25 Conn. 426. So far as we are able to discover from a perusal of the adjudicated cases, no difference is to be noted between instances where the condemnation is the result of judicial proceedings or those conducted without such formalities; in either case the authorities seem to concur in holding that, if the *"prescribed mode"* be pursued, then the proceedings are impregnable to collateral attacks; otherwise, at least, in the great majority of instances, they are deemed void and of no effect, and of course must fall before such attacks. And at this point it seems appropriate to quote as specially applicable to the case at bar, a remark made by HOAR, J., in *Glover v. Boston,* 14 Gray, 282, an action of tort attacking collaterally condemnation proceedings. He said: "The appropriation of private property to the public use, which is one of the highest acts of sovereign power, should not be accomplished by the use of ambiguous or uncertain language. The presumption is in favor of the owner of the land, and any act done by public authority which interferes with his rights should be, as it always may be, clear and intelligible."

In concluding this paragraph, we hold that the several tracts of land aforesaid having been assessed at the gross sum of $2,937.34, such appraisement is void, and confers no title so far as concerns that particular appraisement.

5. But one point remains to be considered, the constitutionality of the statute. Session Acts, 1871, sec. 4, pp. 60, 61. The fee in this case was condemned, and the claim is made that this section is opposed to the constitution of 1875, article 2, section 21, which provides that: "The fee of land taken for railroad tracks without consent of the owner thereof shall remain in such owner subject to the use for which it is taken."

Section 4 of the act thus attacked reads as follows: "Every corporation formed under this act, in addition to the general powers conferred by the laws of this state in relation to corporations, shall have power. *First.* To take and hold for the purposes mentioned in this act such real estate as they may acquire either by conveyance to said corporations and such as it may acquire under the provisions of this act by condemnation. *Second.* To take, occupy and condemn any lands and real estate needed for the establishment of such union station or depot, and the same proceedings shall be had therefor as provided in chapter sixty-six (66) of the General Statutes, relating to the appropriation and valuation of land taken for telegraph, macadamized, graded, plank or railroad purposes, so far as applicable thereto, and when so condemned, the said land and any interest therein shall belong to such corporation as owner thereof."

It will be at once observed that the constitution, in the provision quoted, is confined to "*railroad tracks*" alone, and does not in terms extend to lands condemned for *depot* purposes. The law on this point is

stated by a text-writer heretofore quoted in this way: "In the absence of any constitutional restraint, it rests with the legislature to say what interest or estate in lands shall be taken for pubic use. The whole matter thus being in the discretion of the legislature, it may authorize a fee to be taken, and necessarily may authorize any lesser estate or interest to be taken, according to its views of the requirements of the grantee and the demands of the public good." Lewis on Eminent Domain, sec. 277.

But, if it can be conceded that the constitution forbids the taking of the *fee* even for *depot* purposes, still, in such case, the condemnation proceedings would not necessarily be void on that account; an *easement* at law would pass, and so this point has been ruled in regard to a statute which authorized the acquisition of an *"absolute estate in fee simple"* in the land condemned. BERRY, J., in reference to this subject said: "The plaintiff further argues that section 13 is unconstitutional, because it provides that under the proceedings for condemnation the defendant shall acquire 'an absolute estate in fee simple' in the land condemned, whereas, it is entitled to acquire an easement only—'a franchise of way' in the language of our constitution, article 10, section 4. The answer to this position is that if the defendant could not, by reason of any constitutional provision, acquire anything more than the easement, the effect of section 13 would be limited accordingly; and the defendant would be permitted to acquire not 'an absolute estate in fee simple,' but the easement only, the former, the greater, including the latter, the less." *Scott v. Railroad*, 21 Minn. 322.

Even where there was no such prohibition as now exists in our organic law it was held that notwithstanding the term "fee simple" was used, yet, this was not to be taken in a technical sense. WAGNER, J.,

remarking: "It is true that in speaking of the title which the company acquire, the legislature here uses the term 'fee simple;' but did it contemplate a fee simple according to the technical legal meaning of the term?  *  *  *  The use is vested in the public, but the reversionary title still continues in the owner of the soil. In my opinion, notwithstanding the language used, nothing more than an easement passed to the road, giving it perpetual and continuous title so long as it used the land for the purpose for which it was taken, but, when the use was abandoned, then it would revert back to the owner of the premises." *Kellogg v. Malin*, 50 Mo. 496.

For the reasons aforesaid, the judgment should be reversed and the cause remanded.