## BURKE v. THE CITY OF KANSAS, *Appellant.*

### Division One, November 27, 1893.

1. **Condemnation Proceeding**: STREET: COLLATERAL ATTACK. Where, in a condemnation case, a verdict and final judgment are reached, the plain meaning of which is to divest the private ownership of a strip of land, for the purposes of a street, and to award compensation to those found to be entitled thereto, a party defendant (whose land is included in the described street, but to whom no damages are awarded) is, in a collateral proceeding, concluded by the judgment.

2. ——— : ——— : KANSAS CITY CHARTER. Proceedings for opening highways by the mayor and circuit court, under the charter of 1875 of Kansas City, involve the exercise of judicial power.

3. ——— : ——— : JURISDICTION. Jurisdiction of the subject-matter is the authority to hear and determine actions of the general class to which the proceeding in question belongs.

4. ——— : JUDGMENT: COLLATERAL ATTACK. A judgment in a condemnation case, the court having jurisdiction of the subject-matter and of the parties, is conclusive against collateral attack by the latter, though the judgment may be erroneous on its merits, or irregular in its form.

*Appeal from Jackson Circuit Court.*—HON. J. H. SLOVER, Judge.

REVERSED.

Plaintiff, Mr. Thomas Burke, had judgment in the circuit court for damages for defendant's appropriation of his land.   Defendant appealed.

The bill of exceptions, filed by Mr. Burke in the condemnation proceeding, begun in 1879 (referred to in the opinion of the division), gives the following account of the trial therein in the circuit court, viz:

"On the twenty-ninth day of November, 1881, said cause coming on for hearing, the following jury was duly selected and sworn: (Here their names appear).

"The following evidence was introduced by the City of Kansas, to-wit: 'Evidence tending to show that the thirty-two feet off the south side of lot 12, within the boundaries of said street was of the value of from $100 to $150 per front foot; evidence regarding the proper apportionment of the cost of said property to the various lots and parcels to be benefited thereby.'

"The defendant, Thomas Burke, introduced evidence tending to show that he was the owner of the

north twenty-eight feet of said lot 12, within the boundaries of said street and that the same was of value equal to that of said Bryan, Doling and Bryan adjoining thereto on the north, to-wit: Of the value of $150 per front foot, and that he, said Burke, had been, until about two years before said trial, in the actual possession of said property and that he is yet in the actual possession of a portion thereof, having a building erected thereon.

"The City of Kansas then offered evidence tending to show that in the year 1871, an ordinance was passed by the city council of said city, opening said Seventh street from Wyandotte street to Delaware street within the same boundaries prescribed by the ordinance in this case, and under said ordinance a jury was empaneled by the mayor of said city, which jury rendered a verdict among other things assessing to the said Thomas Burke, as damages for the taking of said property, $750, and also assessing against said burke as the owner of lot 17, in block 2, in said addition, for benefits thereto the sum of $650; that afterwards the city council of said city passed an ordinance directing the issue of certificates of indebtedness of said city to the owners of property taken for opening said street for the amounts severally due them and that said Burke was a member of the city council at that time, and voted for said ordinance; that in pursuance of said ordinance a certificate of indebtedness was afterwards issued by said city to said Burke for $100, being the difference between his damages as so assessed and the benefits assessed against him as owner of said lot 17, and that said Burke received said certificate and afterwards collected the same from said city; that the City of Kansas has used part of the property so claimed to be taken and still uses it for the purpose of a street; said Burke objected to said ordinance as irrelevant and incompetent, but

the court overruled his objection and admitted said evidence, to which ruling and decision of the court said Burke at the time excepted.

"Said Burke then offered evidence tending to show that the City of Kansas was afterwards enjoined by this court from collecting from some of the property found to be benefited in and by said verdict, the amounts assessed against such property, and that said special taxes so enjoined were not, in fact, collected by said city for the purpose of paying for the property taken, and that said Bryan, Doling and Bryan were never, in fact, paid anything as compensation for said . north thirty-two feet of lot 13, and that the city never obtained any title to the same under said proceedings. The jury viewed the premises. The City of Kansas then asked the court to instruct the jury as follows:

"'1. The court instructs the jury that if Thomas Burke, in the condemnation proceedings of 1871, read in evidence, was awarded damages for the north twenty-eight feet of lot 13, block 1, Coffman's addition to the City of Kansas, and was assessed with benefits in the same proceedings; and that he accepted the difference between the damages so awarded and the benefits so assessed, this was a ratification of said award and assessment, and he is estopped from calling in question the validity of said proceedings, even if such proceedings were irregular or invalid as to other parties to said proceedings who were not duly notified, or for other reasons not legally bound by them.

"'2. If you find the facts stated in instruction numbered 1, then the jury are instructed not to assess any part of the amount to be paid for the taking of land against lot 17, in block 2, in Coffman's addition, in this proceeding.

"'3. The jury are instructed to ascertain the actual damage done to each person in consequence of the

taking of property in this proceeding without reference to the proposed improvement, or the just compensation to be made therefor. And to pay such compensation the jury will first assess against the city the amount of benefits to the city and public generally. The balance of such compensation the jury will assess against the several lots and parcels of land in the limits deemed benefited by this proceeding; each lot or parcel of ground to be assessed with an amount bearing the same ratio to such balance as the benefit to each lot or parcel bears to the whole benefit to all the private property assessed.'

"To the giving of said instructions numbered one (1) and two (2), said Thomas Burke objected, but the court overruled said objection and gave said instructions, to which rulings and decisions of the court said Thomas Burke at the time excepted.

"The jury then on the first day of December, 1881, returned their verdict.

"And afterwards, on the fifth day of December, 1881, said Thomas Burke filed herein his motion to set aside said verdict and for a new trial, and to set aside said judgment," etc.

The judgment of the circuit court in that case was in these words, viz.:

"It is, therefore, ordered, adjudged and decreed by the court that the finding and verdict of the jury aforesaid be, and the same is hereby, confirmed, and it is ordered, judged and decreed by the court that the City of Kansas have and hold the property sought to be taken, to-wit: 'That part of lot twelve (12), block one (1), in Lott Coffman's addition to the City of Kansas, within the boundaries of the street established by said ordinance, the same being thirty-two (32 feet off the south side of said lot;' also 'that part of lot thirteen (13), in block one (1), in Lott Coffman's

addition to the City of Kansas, within the boundaries of the street established by said ordinance, the same being twenty-eight (28) feet off the north side of said lot,' for the purposes specified 'in the said ordinance providing for the improvement, being for public use as such street; and that the City of Kansas pay therefor the amount assessed against said city, to-wit, the sum of thirty-two hundred dollars ($3200), and that the several lots and parcels of private property assessed to pay compensation aforesaid by the verdict or finding of the jury herein, stand charged and be bound respectively for the payment of said assessments, with interest at the rate of fifteen (15) per cent. per annum if not paid within ten days, and that this judgment be enforced by special execution to collect assessments as aforesaid, and that the City of Kansas be put in possession of the property so taken, or any part thereof, the full compensation therefor being paid or tendered, and that the costs and charges of this proceeding be taxed against the City of Kansas."

The other essential facts are stated in the divisional opinion.

*F. F. Rozzelle, W. S. Cowherd, F. H. Dexter, A. M. Allen* and *James Black* for appellant.

(1) The petition did not state a cause of action for conversion and the demurrer should have been sustained. (2) The voluntary acceptance by the owner of property of the damages assessed or any part thereof under condemnation proceedings, in the absence of fraud or mistake, cures any and all defects and irregularities in the proceedings and acts as an estoppel *in pais* against the owner. Elliott on Roads and Streets, p. 207; Dillon on Municipal Corporations [4 Ed.], secs. 592, 593; Mills on Eminent Domain [2 Ed.], secs. 324,

329; Herman on Estoppel, secs. 1069, 1149; Lewis on Eminent Domain, sec. 531; 2 Smith's Leading Cases [6 Am. Ed.], p. 769; *Austin v. Loring*, 63 Mo. 22; *Smith v. Warden*, 19 Pa. St. 424; *Garnar v. Bird*, 57 Barb. 277; *Clyburn v. McLaughlin*, 17 S. W. Rep. 692; *State v. Lubke*, 15 Mo. App. 167; *Embury v. Conner*, 3 N. Y. 511; *Sherman v. McKeon*, 38 N. Y. 275; *City v. Railroad*, 108 N. Y. 14; *Burns v. Railroad*, 9 Wis. 450; *Karber v. Nellis*, 22 Wis. 215; *Whittlesey v. Railroad*, 23 Conn. 421; *Hitchcock v. Danbury*, 25 Conn. 516; *Test v. Larsh*, 76 Ind. 452; *Railroad v. Johnson*, 84 Ind. 420; *Chatterton v. Parrott*, 46 Mich. 436; *Kile v. Yellowhead*, 80 Ill. 208; *Hartshorn v. Potroff*, 89 Ill. 509; *Hatch v. Hawkes*, 126 Mass. 177; *Magrath v. Brock*, 13 Up. Can. (Q. B.) 629; *Company v. Middaugh*, 12 Col. 434; *Railroad v. Allen*, 13 Col. 229. (3) The condemnation proceedings and receipt of damages *ipso facto* vest the title in the party seeking to condemn. Mills on Eminent Domain, secs. 329, 334; Elliott on Roads and Streets, p. 207; 6 American and English Encyclopedia of Law, pp. 591, 627; *Railroad v. Smythe*, 45 Ind. 322; *State v. Dickson*, 3 Mo. App. 466; *Evans v. Haefner*, 29 Mo. 141; *Tamm v. Kellogg*, 49 Mo. 118; *State v. Culver*, 65 Mo. 609; *Rees v. City of Chicago*, 38 Ill. 322. (4) The mere non-user and permissive use by another for any length of time of an easement acquired by the exercise of the right of eminent domain do not constitute an abandonment. Dillon on Municipal Corporations, secs. 659, 660, 667–675, inclusive, and 683; Elliott on Roads and Streets, pp. 659, 660, 668, 669, 670; Lewis on Eminent Domain, secs. 597, 589, p. 759; Tiedeman on Real Property, sec. 605; 3 Kent's Commentaries, marginal page 449; 6 American and English Encyclopedia of Law, pp. 146, 603; Revised Statutes, 1889, sec. 6772; *Ins. Co. v. St. Louis*, 98 Mo. 422; *Heald v. Moore*, 79 Me. 271; *Vogler v.*

*Geiss,* 51 Md. 410; *Dyer v. Sanford,* 9 Met. 395; *King v. Murphy,* 140 Mass. 254; *Challiss v. Railroad,* 16 Kan. 117; *Curran v. Louisville,* 83 Ky. 628, 632. (5) A judgment in a condemnation proceeding is not an entirety as to all parties defendant, but as to each defendant. Lewis on Eminent Domain, sec. 515; *Anthony v. Commissioners,* 14 Pick. 189; *Rees v. City,* 38 Ill. 332; *Bloch v. Price,* 32 Fed. Rep. 447; *Dickerson v. Chrisman,* 28 Mo. 141; *Polkmon v. Meatt,* 49 Mo. 349; *Belkin v. Hill,* 53 Mo. 497; *Brawley v. Ranney,* 67 Mo. 280; *Holton v. Towner,* 81 Mo. 367; *Evans v. Haefner,* 29 Mo. 141; *Company v. Middaugh,* 12 Col. 434; *City of Kansas v. Hill,* 80 Mo. 539. (6) Instructions two and three given for plaintiff erroneously state the law as applied to this case. On this point see the cases previously cited. (7) By submitting the question of ownership of this property in the condemnation proceedings of 1879, the title of the property became *res adjudicata,* as well as the question of further damages and benefits. Herman on Estoppel, secs. 258 and 259; *Railroad v. Allen,* 13 Col. 229; *Brisbane v. Railroad,* 23 Minn. 114; *Greene v. Haddom,* 51 Conn. 547. (8) Instruction numbered 4 given for plaintiff asserts an incorrect doctrine as to the measure of damages in this case. *Jones v. Railroad,* 70 Ala. 227.

*Gage, Ladd & Small* for respondent.

(1) That this action can be maintained is too well settled in this state to require the extended citation of authorities. Wherever a municipal corporation having the right of eminent domain fails to exercise that right lawfully, but wrongfully enters upon private property and holds and uses the same for street purposes, the owner may bring his suit for the value of the property, and the judgment, if for the full value, will *ipso facto*

work a dedication thereof to the public. *Soulard v. St. Louis*, 36 Mo. 546; *Jamison v. Springfield*, 53 Mo. 224; *Hickerson v. Mexico*, 58 Mo. 61; *Combs v. Smith*, 78 Mo. 32; *Welsh v. Railroad*, 19 Mo. App. 127. (2) The entire case of the city stands and proceeds upon a fundamental error contained in point 5 of the brief, viz: "A judgment in a condemnation proceeding is not an entirety as to all parties defendant, but as to each defendant." This is not true. Neither is it true that such judgments under charters like that which governs the proceeding of 1871 are, in all respects, entireties. In some respects they are entireties and in some they are not; in respect to all the questions raised in this case, the condemnation proceeding of 1871 was an entirety. *State ex rel. v. Gill*, 84 Mo. 248; *Anderson v. Pemberton*, 89 Mo. 66; *Leslie v. St. Louis*, 47 Mo. 475; *St. Louis v. Gleason*, 15 Mo. App. 25; *Brush v. Detroit*, 32 Mich. 43. (3) The neighboring lots could not be bound for a tax levied on the benefits arising to them from the street opening, unless the property necessary to open the street and thus insure such benefits was legally acquired for the purpose. Sess. Acts, 1870, p. 345, 346; *State ex rel. v. Gill*, 84 Mo. 248; *Leslie v. St. Louis*, 47 Mo. 475; *Garrett v. St. Louis*, 25 Mo. 505. (4) If $750 be just compensation, and $100 only is paid, there is no valid condemnation. Until full payment of his just compensation is actually made, his title remains unimpaired. *Green v. Railroad*, 82 Mo. 657; *Evans v. Railroad*, 64 Mo. 453; *Ring v. Bridge Co.*, 57 Mo. 496; *Provolt v. Railroad*, 57 Mo. 256; *Walther v. Warner*, 25 Mo. 277; *Kennedy v. Indianapolis*, 103 U. S. 599; *Colton v. Rossi*, 9 Cal. 596. (5) The law is that where proceedings are instituted by the parties seeking to condemn property, and it is alleged in the petition that certain persons are owners of the property desired, proof of title is dispensed with and

the petitioner is estopped to dispute the title as alleged in the petition.   In such cases the title is not in issue and is not before the court and cannot be adjudicated. *Wright v. Town*, 64 Mo._ 165; *Commissioners v. Bisby*, 37 Kan. 253; *San Jose v. Reed*, 65 Cal. 241; *Railroad v. Mud Creek Co.*, 1 Tex. App. Civil Cas. 169; *Queen v. London, etc., Railroad*, 3 Ellis & Bl. 443; *Turnpike Co. v. Burket*, 26 Ind. 53; *Railroad v. Clark*, 23 Mich. 519; *Railroad v. Laurie*, 63 Ill. 264; *Wilcox v. Oakland*, 49 Cal. 29; *Anthony v. Lawhorne*, 1 Leigh, 1. (6) The court properly allowed the plaintiff the value of the property at the time of the trial.   *Soulard v. St. Louis*, 36 Mo. 546; *Jamison v. Springfield*, 53 Mo. 224; *Welsh v. Railroad*, 19 Mo. App. 127; *Combs v. Smith*, 78 Mo. 34; *Hickerson v. Mexico*, 58 Mo. 66; *Railroad v. Town. Site Co.*, 103 Mo. 465; *Railroad v. Ruby*, 15 S. W. Rep. (Tex.) 1040; *Railroad v. Cave*, 15 S. W. Rep. (Tex.) 786.

BARCLAY, J.—This action was brought to recover of defendant damages for taking possession of, and appropriating to public use, a lot of land in the City of Kansas, which lot formed a part of Seventh street at the time this case was begun, and was alleged to belong to plaintiff.

The city presented four defenses: *first*, a general denial; *second*, certain facts connected with a proceeding brought.in 1871 to condemn this property (which facts will appear further on); *third*, that the city had acquired plaintiff's title by judgment in a condemnation action begun in 1879 (stating the particulars thereof), under which it had taken possession of the land; and, *fourth*, the statute of limitations.

Plaintiff's reply admitted certain facts which will be mentioned later, and denied the other matters alleged in the answer.

The cause was tried by the court. The greater part of the evidence is documentary, and the decisive facts mutually conceded.

The plaintiff, Mr. Burke, acquired the land in 1869. The defendant's claim of ownership is based entirely on proceedings taken with the view to subject it to public use by the exercise of the power of eminent domain.

There were two distinct proceedings prosecuted for that purpose; the first in 1871; the second beginning in 1879. The plaintiff was a party to both proceedings, and both were pursuant to city ordinances for the opening of Seventh street between Delaware and Wyandotte streets. In the case in 1871 the city sought to condemn seven lots, including that of Mr. Burke now in controversy. The mayor's jury awarded to him $750 damages for the lot, and assessed "benefits" to the amount of $650 against another neighboring lot of his, which was not taken, but lay within the "benefit district." Mr. Burke was, at the time, a member of the city council, and, after the verdict, introduced a resolution confirming it, and an ordinance providing for the payment to the proper parties of the sums assessed against the city, including an item of $100 (the difference in his favor between the damages and the "benefits") to himself.

After the passage of the ordinance (as the reply admits), Mr. Burke received from the city $100, balance of damages above indicated, and he has kept it ever since.

But the courts afterwards held the assessments of "benefits" made in that proceeding void, in various actions brought by property owners for that purpose; in consequence of which rulings the city comptroller abated and canceled all the assessments for benefits. In 1879 the second ordinance for opening the street was

passed, in the usual form, but defining a smaller bene-
fit district than before. It declared that "Seventh
street be opened and extended from the west line of
Delaware street to the east line of Wyandotte street,
the boundary lines whereof shall be described as fol-
lows:" (Then came a particular description of the land
proposed to be taken, including that now in suit);
"and all private property within such boundaries is
hereby taken and condemned for public use as such
street, and just compensation therefor shall be assessed,
collected, and paid according to law." The ordinance
then proceeded to establish the precise limits of the
"benefit" district, and made a small appropriation to
pay the costs and expenses of the necessary court pro-
ceedings. Those proceedings were shortly commenced.
Mr. Burke was formally notified that his property
would be taken for the purposes specified in the ordi-
nance, etc., and he appeared before the mayor. A
jury was empaneled and a trial had, which in due
course resulted in a verdict assessing damages for, and
levying benefits in various sums against, the property
affected. As to Mr. Burke, no damages were awarded;
but $100 benefits were charged against his neighboring
lot 17. He then took an appeal to the circuit court,
where the cause was tried anew. He was represented
by counsel, and the issue was distinctly made and tried,
whether or not he was entitled to any damages or was
estopped from claiming full title because of the facts
already mentioned in connection with the first con-
demnation case. The exact form in which this issue
was presented may be seen from the recital of the
instructions to the jury by the court in that cause,
appearing in the statement accompanying this opinion.

By the verdict of the jury damages were awarded
to certain land owners, named, and benefits levied
against the lots of certain others. Mr. Burke's lot 17

was mentioned, but assessed "nothing" for benefits; and as to the property now in controversy this finding appears: "We, the jury, find that Thomas Burke was awarded damages for the north twenty-eight feet of lot 13, in block 1, Lott Coffman's addition to the City of Kansas, by a former condemnation proceeding in the year 1871, and that he accepted the difference between his benefits and damages so assessed therefor."

No damages were assessed in his favor. Then followed a judgment of the court confirming the finding of the jury and adjudging that the City of Kansas "have and hold the property sought to be taken, to-wit," (describing it, and including, by a particular description, the lot in question) "for the purposes specified in said ordinance," etc. (The precise language of the judgment is given in the statement preliminary to this opinion.)

The common council confirmed the proceedings, and, after the judgment became a finality, the city, in 1883, took possession of the lot in dispute, and has used it as a street since then.

On the trial of the case at bar the circuit court, over defendant's exception, declared the law to be that "the condemnation proceedings shown in evidence were not sufficient in law to divest plaintiff's title," and accordingly rendered judgment for plaintiff for the value of the property, $28,000. From that decision defendant appealed, after the usual motions and exceptions to secure a review.

In our opinion the result of the appeal turns on the effect to be ascribed to the second proceeding to open Seventh street. The plaintiff claims that the judgment therein is a nullity and did not divest any interest he then had in the lot.

Under the city charter (Sess. Laws, 1875, p. 244, sec. 1, and p. 347, sec. 6,) the mayor and, on appeal,

the circuit court are invested with power to hear and determine proceedings for taking private property for public use as a street.   That power is a judicial power (*Railroad v. Lackland* (1857), 25 Mo. 515); and when rightly called into play must be regarded within the sphere of its legitimate operation, as possessing suffi- cient force to reach the objects it is designed by the constitution and laws to accomplish.

The authority to pass judgment in a certain class of cases, involving the exercise of judicial power, carries with it that conclusive sanction which is necessary to make such judgments effective.

In the case before us the mayor and circuit court had jurisdiction, in the first instance, of the subject matter—that is, of this general class of actions to acquire land for public use as a street.   *Rosenheim v. Hartsock* (1886), 90 Mo. 365; *Hope v. Blair* (1891), 105 Mo. 93.

They also had jurisdiction of Mr. Burke, person- ally, who appeared, appealed and took an active part, otherwise, in the litigation.   The purpose of the pro- ceeding was to divest the private ownership, whatever its nature, of the strip of land (especially described) be- tween Delaware and Wyandotte streets, by transferring the strip to the City of Kansas as part of Seventh street. All owners or "claimants" of land, or "of any interest or estate therein, affected by the action, were properly brought in.   (Sess. Acts, 1875, p. 244, sec. 2.)   Mr. Burke being in possession, making some claim, might be summoned as a party in order that his interest, whatever it was, could be acquired.   The course of the trial in the circuit court indicates that the real issue submitted between Mr. Burke and the city was, whether or not his acceptance and retention of the balance of the damages awarded him in the first condemnation proceeding, did not estop him from claiming compen- sation as owner of the land in the second case.

The jury found in the affirmative but the obvious purport of that finding is that he was entitled to no damages for such interest as he claimed.   The final judgment of the court expressly adjudged to the city of Kansas the title to this identical lot now in controversy as part of the street defined by the ordinance on which the action was based;   it also adjudged damages and benefits in accordance with the verdict.   No benefits were levied against Mr. Burke's adjacent lot 17 because of the finding as to the result of the former case.   That finding may be an entirely incorrect deduction from the law and facts on which it was predicated, but the power of the jury and court to render it is not affected by that consideration.   *Holt   Co.   v.   Cannon*   (1893),   114 Mo. 514;   21 S. W. Rep. 851.   The substance of the judgment was that the City of Kansas obtained the title to the land, embraced within the street limits, and that Mr. Burke should receive no damages.   It is evident that he so understood it then.   He moved for a new trial of the action;   and, upon denial of his motion, saved exceptions and preserved them by a proper bill. But then he desisted from further opposition and the judgment became final.   It was enforced by the city in taking possession of the property in July, 1883.   This action, begun in 1887, is simply a collateral attack on that judgment.

The principle is invoked by plaintiff that the title cannot be tried in condemnation cases.   Whatever of value there may sometimes be in that proposition, it is undoubtedly true that the chief legal purpose of such proceedings is to transfer title to the public trustee from the private owner, whatever his interest, and to ascertain the compensation payable for such transfer.   Here the court adjudged the title to the street to the City of Kansas and did not adjudge any damages to Mr. Burke for his interest in the land so taken.   That judgment

may be entirely erroneous; it may be irregular in form; but its substance and meaning are plain, and we must give them effect. (Revised Statutes, 1889, sec. 2117). The judgment was one which the court pronouncing it had jurisdiction to render, and it is conclusive on the present plaintiff. (*Union Depot Co. v. Frederick* (1893), 117 Mo. 138; 21 S. W. Rep. 1118;) *Oberfelder v. Railroad* (1893, N. Y.), 33 N. W. Rep. 937.

The learned circuit judge erred in the ruling that the condemnation proceedings did not divest the title of Mr. Burke.

Upon the facts admitted by both parties, plaintiff has no cause of action. The judgment is reversed. BLACK, C. J., BRACE and MACFARLANE, JJ., concur.

### ON MOTION FOR REHEARING.

BARCLAY, J.—Plaintiff has moved for a rehearing and submitted a vigorous argument in support of the motion.

1. It is asserted that the conclusion announced is in conflict with section 7 of article 7 of the charter of Kansas City (Sess. Laws, 1875, p. 249, sec. 7), the effect of which is claimed to be, to forbid any decision upon title to property "as between different claimants or as between the city and a third party," in a condemnation suit.

In determining what meaning should be placed on that section, it must be borne in mind that it is but a part of the article or chapter governing the "opening of streets and condemnation of private property for public use." It was probably not designed to nullify all that is contained in the other sections of that article, nor to prevent the city from acquiring the title to the land, taken for public use, as against the owners, claimants, or others interested, who are properly brought before the court in the case. Section 7 is

intended to make provision for instances where there is a controversy touching the ownership of the fund awarded as compensation for any piece of land to which the public has taken title in the proceedings. The chief aim of the section is to prevent delay in opening the street, by allowing the city to obtain possession of the land condemned, upon securing payment of the compensation, where there is a controversy as to its title, and without awaiting the settlement of that controversy. That provision of the law must be construed in harmony with the general design and object plainly expressed throughout the chapter of which it forms a part.

But, conceding that section 7 forbade the sort of investigation of Mr. Burke's title which was made (as shown by the evidence and instructions) in the second condemnation case, nevertheless the proper construction and application of that section involved a question of law, upon which the decision of the court, has now become final. If the present plaintiff thought that the court in that case should not have gone into the question of his title or want of title to the land sought to be condemned, it was his privilege to object, and to follow up the objection by appropriate, direct proceedings to correct any error the court may have committed in ruling thereon. It was unquestionably an issue in that case, what amount of compensation, if any, Mr. Burke was entitled to receive for his interest in the land, whatever it was; and if the court gave too wide a range to the investigation on that issue, to the prejudice of Mr. Burke, it was a judicial error which does not impair the force of the judgment on that issue when assailed collaterally. Such an error is certainly no more serious in nature than one involving a constitutional right; and an error of the latter sort has been expressly held to furnish no ground for a successful

collateral attack on the judgment. *Evans v. Haefner* (1859), 29 Mo. 151.

2. It is next insisted that the judgment here fails to recognize the effect of the constitutional command that "the right of trial by jury as heretofore enjoyed shall remain inviolate" (art. 2, sec. 28, Const. 1875), because the circuit court, in the condemnation case, had no power to impanel a jury of twelve, but could use one of six men only; hence that the trial of Mr. Burke's title by the latter was unconstitutional.

One answer to that contention is that if there is anything of substance in it, the objection to the procedure adopted by the circuit court in that particular, should have been made in that court at the proper time. What has been said, in the latter part of the preceding paragraph, as to the futility of such an objection in a collateral proceeding need not be repeated.

3. It is then insisted that the whole drift of the original opinion is wrong, because the judgment in the second condemnation case is simply an adjudication upon Mr. Burke's title between him and the city, and, as such, is a nullity, void absolutely, and of no legal vitality whatever.

Principles were declared in the opinion first announced herein, which, we think, meet this claim fully; but as counsel seem to regard that statement of them as entirely unsatisfactory, we add some further observations.

Under the charter of Kansas City the latter had power, by appropriate steps, to acquire any sort of title that might be held by a claimant, within the territorial limits of a projected street, and to determine what compensation should be paid for the land or interest so acquired.

We hold the effect of the judgment in the second

condemnation proceeding to be that the city subjected Mr. Burke's estate or interest in the land, whatever its nature or extent, to the public use, and that the court adjudged that he was not damaged by such taking, further than his other lot (17) was benefited by the proposed improvement. This last fact should not be lost sight of. To the extent to which his neighboring lot (17) was benefited by the street, he certainly was compensated in the condemnation case. If he was entitled to larger compensation than was then awarded, or if the result was, in any respect, founded on the application of erroneous views of legal principles or procedure, he should have taken steps to secure a review and correction of the judgment. But he allowed it to become a finality, and now asks for the very compensation which he could have secured in that suit, had he been entitled thereto.

We consider the judgment conclusive upon him on that point, when assailed in this collateral way. *Dunlap v. Pulley* (1870), 28 Iowa, 469; *Hankins v. Calloway* (1878), 88 Ill. 155; *Howard v. State* (1880), 47 Ark. 431.

Besides the grounds on which judgments generally are held secure against collateral attack, there are stronger reasons for adhering closely to that doctrine in street opening cases. Had Mr. Burke, in the last condemnation suit, obtained the compensation he now demands, it would have been charged, almost entirely, against the adjacent property immediately benefited. But should his present action prevail, that expense would necessarily fall upon the taxpayers of the city at large, on whom it was never intended by the charter to be placed. Mr. Burke's other lot (17) in the "benefit district," would have had to bear, in part, the increased cost of the taking the land, and his compensation been then fixed at the figures he now claims. But that lot escaped assessment for benefits in the condemnation

case because he was to receive no damages for his then interest in the property upon which the street was located. Whether the judgment awarding him no damages beyond the benefits to lot 17 was correct or erroneous is not now the question. The court had jurisdiction to render that kind of a judgment, and had jurisdiction over Mr. Burke personally. So its adjudication concludes him and places an insurmountable barrier to his recovery in the present action. This is a necessary deduction from principles announced in late decisions of the court *in banc. Lingo v. Burford* (1892), 112 Mo, 149; 20 S. W. Rep. 459; *Union Depot Co. v. Frederick* (1893), 117 Mo. 138; 21 S. W. Rep. 1118.

We do not feel ourselves called upon by this motion to distinguish or review the earlier cases which counsel insists are not in harmony with those just cited or with the judgment in this case, further than to refer to the opinions by the court *in banc* in the recent cases mentioned. The motion for rehearing is overruled. All the members of this division concur.