Martin v. Estes.

MARTIN *et al.* v. ESTES, *Appellant.*

In Banc, February 5, 1896.

1. **Fraudulent Conveyance:** PREFERENCE. A debtor, in failing circumstances, may prefer one creditor to another.

2. ———: PROOF OF FRAUD. Fraud alleged must be affirmatively shown; but that proof may be furnished by circumstantial as well as by direct testimony.

3. ———: PURCHASER'S JOINDER IN THE FRAUD. A creditor purchasing property from a failing debtor, may be affected with the intent of the latter to defraud other creditors, where the former shares that intent and aids in giving effect to it.

4. ———: ———: STATUTE. A purchase made as above is void under the Missouri law of fraudulent conveyance, although the purchaser may have given a sound price for the property.

5. **Equity Practice:** REVIEWING FACTS: SUPREME COURT. In suits involving equitable rights the supreme court has jurisdiction to pass upon the facts as well as upon the law.

*Appeal from Pike Circuit Court.*—HON. E. M. HUGHES, Judge.

AFFIRMED.

*W. H. Morrow, Warwick Hough,* and *Warwick M. Hough* for appellant.

(1) This court in equity cases will review all questions presented in the record and make findings of facts according to the weight of the evidence adduced, and will determine the law applicable thereto. *Thompson v. Cohen,* 24 S. W. Rep. (Mo.) 1023. (2) It is alleged in plaintiff's petition that the conveyance of the land,

a part of which is here in controversy, from Wells to Estes, was the consummation of a design on their part to defraud the creditors of Wells. *First.* The controlling questions, as to this issue, are as to whether or not Wells had such intent, and whether or not Estes participated therein. *Steadman v. Hayes,* 80 Mo. 319. *Second.* Both of these questions, in order to render the transaction fraudulent, must be affirmatively determined. *Gentry v. Robinson,* 55 Mo. 260; *Henderson v. Henderson, Ibid.* 555; *Ryan v. Young,* 79 Mo. 30. *Third.* There is no controversy over the fact that Estes had a just and valid claim against Wells, at the time of this transaction, amounting to $48,880.03, a sum much greater than the land would probably have sold for at a sale under the then existing deeds of trust; and it is a well settled principle, in this state, that a debtor may prefer one creditor to the exclusion of another, and may transfer all of his property to one and leave the other wholly unpaid; and the fact that the debtor is in embarrassed circumstances makes no difference as to this right, nor is it material that another creditor has a suit pending against him. *Cason v. Murray,* 15 Mo. 387; *Kuykendall v. McDonald, Ibid.* 416; *Rumbolds v. Parr,* 51 Mo. 592. *Fourth.* Nor is it a valid objection to the conveyance of his property by a debtor to a *bona fide* creditor that it operates to hinder or delay other creditors, or that it was made on the part of the debtor with the purpose that it should so operate, or that the creditor receiving it was aware of that intent, provided he accepted it with the honest purpose of receiving payment of his debt. *Shelley v. Booth,* 73 Mo. 74; *Hard v. Foster,* 98 Mo. 297; *Sexton v. Anderson,* 95 Mo. 373. *Fifth.* That the intent of the parties is to be ascertained from all the circumstances under which this conveyance was made, is a proposition about which there can be no question. *Cason v. Murray,* 15 Mo.

378. (3) If the evidence does not show that Wells had a purpose to hinder or defraud his creditors, it is immaterial, so far as plaintiffs are concerned, that Estes, in the transaction, as charged in the petition, effected the purchase of the land for the purpose of cheating and defrauding Wells. *Parker v. Roberts*, 22 S. W. Rep. (Mo.) 914. (4) The decree rendered by the court below seems to have been predicated upon the conclusion of the chancellor that the deed of May 18, 1887, from Wells to Estes, though absolute on its face, was in fact only a mortgage. If this conclusion is correct (assuming that the sheriff's sale at which plaintiffs bought was in all respects valid), then it is conceded that plaintiffs became the owners of, and entitled to, Wells' equity of redemption and were placed in a position to enforce this right. *First.* Appellant insists, however, that the transaction between himself and Wells was a conditional sale, and was so intended. In determining this question the intention of the parties must govern. To make a sale purporting to be absolute a mortgage, it is not sufficient that the party executing considered it as such; it must be so considered and intended by all the parties thereto. *Holmes v. Fresh,* 9 Mo. 201. *Second.* To determine the intention the court will look, not only to the deeds and writings, but to all the circumstances of the transaction. *Brant v. Robertson*, 16 Mo. 129; *Cornell v. Hall*, 22 Mich. 377. *Third.* This court has declared the test to be: "If the relation of debtor and creditor remains, and a debt still subsists between the parties, it is a mortgage; if, however, there is no debt still subsisting, and the grantor has the privilege of refunding if he pleases by a given time, and thereby entitling himself to a reconveyance, it is a conditional sale." *Slowly v. McMurray*, 27 Mo. 113; *Henley v. Hotaling*, 41 Cal. 22; *Page v. Vilhae*, 42 Cal. 75; Pomeroy's Eq. Juris., sec. 1195; *Goodman v.*

*Grierson,* 2 Ball & B. (Eng.) 274.   *Fourth.* This court has also declared, in the case first cited below, that a deed absolute in its terms, delivered in payment of a debt, is not converted into a mortgage merely because the grantor therein (the creditor) gives a contemporaneous stipulation binding him to reconvey on being reimbursed, within an agreed period, an amount equal to his debt and the interest thereon. *Turner v. Kerr,* 44 Mo. 429; *Hubly v. Harris,* 68 Tex. 91; *Perdue v. Bell,* 83 Ala. 396; *Conway v. Alexander,* 7 Cranch (U. S.), 218.

*J. D. Hostetter, Clark & Dempsey,* and *D. A. Ball* for respondents.

(1) Fraud may be presumed in equity but must be proved at law. Courts of equity will act upon circumstances indicating fraud, which courts of law would not deem sufficient and will grant relief upon grounds of fraud established by presumptive evidence, where courts of law would be powerless to act. *King v. Moore,* 42 Mo. 551. (2) The earmarks or badges of fraud disclosed in this record are numerous. *First.* The deed was made by an insolvent pending a suit against him for a large sum of money. Bump Fraudulent Conveyances, 37. *Second.* A secret interest was reserved by the grantor. *Donovan v. Dunning,* 69 Mo. 436; *Manufacturing Co. v. Steele,* 36 Mo. App. 496. *Third.* The making and acceptance of an absolute deed, intending it only as security and the retention of the evidence of the debt by Estes. Bump Fraudulent Conveyances, 41. *Fourth.* The retention of possession and control of the premises by Wells. *King v. Moore,* 42 Mo. 557. *Fifth.* The retention of the mortgage notes by Estes. Bump Fraudulent Conveyances, 51. *Sixth.* The other questionable transactions between the same parties

retaining the Ashley land. Bump Fraudulent Conveyances, 53. *Seventh.* The value of the property conveyed being largely in excess of the stated consideration. *Curd v. Lackland,* 49 Mo. 585; *Morgan v. Wood,* 38 Mo. App. 255. *Eighth.* The confidential relations existing between them. *Wells v. Thomas,* 10 Mo. 237. *Ninth.* The unusual method of making the transfer. *Snell v. Harrison,* 104 Mo. 188; *Baldwin v. Whitcomb,* 71 Mo. 651. (3) A creditor can not use even a *bona fide* debt to assist a debtor in placing his property beyond the reach of other creditors, even though he thereby secures his own debt; or, if he takes more than enough to secure him, the transaction is, as to creditors, void *in toto* and his debt will be postponed until the other creditors are satisfied. *Shelley v. Booth,* 73 Mo. 74; *Sexton v. Anderson,* 95 Mo. 373. (4) The record shows that Estes was present during the whole of the trial and heard all of the damaging evidence against him, and did not offer himself as a witness to contradict or explain any statement. A failure to testify under such circumstances raises almost a conclusion of his participation in the fraud. *Cass County v. Green,* 66 Mo. 512; *Leeper v. Bates,* 85 Mo. 224.

BARCLAY, J.—This is a suit to set aside a deed of conveyance of land in Lincoln county. The deed was made by Mr. Lemuel M. Wells to Mr. Fielden Estes, May 17, 1887.

These parties are the defendants in this suit.

The plaintiffs are the purchasers of Mr. Wells' interest in the land under a judgment against him. The judgment was rendered after the deed was duly executed and recorded.

The attack upon the instrument is grounded on the charge that it is void because designed to defraud the

creditors of Mr. Wells, and that Mr. Estes, the grantee, participated in that purpose.

The allegations of fraud are denied by the answer.

The cause was fully heard; and, upon due consideration of a large mass of testimony, the circuit court found for plaintiffs and entered a decree annulling the deed.

Following is a general outline of the case:

In 1869, Mr. Wells bought a large body of land in the northeastern part of Missouri. The estate was generally known in the vicinity as the "Cole Land," or tract, as it had formerly belonged to Mr. Cole. It comprised about 3,000 acres, 2,400 of which were in Pike county, and 600 in Lincoln county. The purchase price at which Mr. Wells bought was $45,000. Of this amount he paid in cash $17,700, and gave notes for the remainder, secured by a deed of trust on the entire tract.

About the same time Mr. Wells borrowed of his brother, Mr. Charles C. Wells, who lived in West Virginia, $10,000, for which he executed a note. This $10,000 was, presumably, a part of the cash payment made by L. M. Wells on the Cole land.

At the time of the purchase of the Cole land, L. M. Wells was the owner of other tracts in, and around Ashley, Missouri, and was largely indebted to sundry persons; to secure them he had mortgaged his Ashley lands.

As time passed on, L. M. Wells' indebtedness (some of which bore ten per cent interest) swelled to such proportions as to render him virtually insolvent.

In 1886 Mr. Charles C. Wells died, and shortly afterwards (in the same year), his legal representatives began an action in Pike county against Mr. Lemuel M. Wells to recover the indebtedness due by the latter to his brother Charles which had grown (by additions

of interest) to nearly $30,000. That case resulted in a judgment against Lemuel M. Wells in favor of his brother's estate, April 17, 1888, for $31,395.40; and it was under that judgment that the execution sale to plaintiffs, of that part of the tract which lies in Lincoln county, was made.

The defendant, Mr. Estes, long before the death of Mr. Chas. C. Wells had advanced money as loans to the defendant Mr. Wells, taking as security the purchase money notes of the Cole land from the prior holders thereof; and had also made other loans to Mr. L. M. Wells, to secure which he accepted a second deed of trust on the Cole tract.

In consequence of these transactions, defendant Mr. Wells was indebted to defendant Mr. Estes, May 18, 1887, in a sum which at that time was ascertained, by an account taken between them, to be $48,880.03, secured upon the Cole tract.

On that date the deed in question was made to Mr. Estes by Mr. Wells. It is an absolute deed to the entire Cole property for a recited consideration of $48,000.03.

At the date of the deed, the action was pending against Mr. Wells, for the debt due his brother's estate, which resulted in the judgment in 1888, under which plaintiffs claim their interest in the property.

The contention of the defendant, Mr. Estes, is that the transaction was a fair and honest purchase of Mr. Wells' interest in the land for the debt then due upon it, subject to a right of Mr. Wells to repurchase the property for a certain price within a specified period.

This right was evidenced by a written agreement, of May 18, 1887, between the parties, the particulars of which need not be more fully given.

The plaintiffs contend, and the trial court found,

that the circumstances of the transaction established that its purpose was to cover up and conceal the property from the creditors of Mr. L. M. Wells, and that both grantee and grantor shared therein with the same design.

It is not necessary to go minutely into the details of the testimony in this opinion. A variety of facts were shown which tended strongly to support the plaintiffs' allegations.

Many conversations and admissions of the principal defendant were given in evidence, by living witnesses, conducing to support the theory that Mr. Estes intended to aid Mr. Wells in, at least, hindering or delaying the promoters of the suit then pending.

The rules of law applicable do not seem to be seriously in controversy.

It is settled in Missouri that a debtor in failing circumstances may prefer one creditor to another.

It is equally well recognized that fraud must be affirmatively proved, but yet it may be shown by circumstantial, no less than by direct evidence.

It is also plain law that a purchaser of property from a failing debtor may be affected by the intent of the latter to hinder, delay or defraud his other creditors, where such purchaser shares that intent and aids in giving effect to it. In that event, the transaction is rendered void by the express terms of our positive law, even though the purchaser may have given a sound price for his purchase (R. S., 1889, sec. 5170).

Whether the transaction between the defendants was a conditional sale, or a mortgage in equity, we need not inquire. For if it was not characterized by good faith, it could not stand as to creditors, whatever its effect might be between the immediate parties.

The supreme court in suits of this nature, which fall within the cognizance of equity, has jurisdiction to

review the facts as well as the law, and to pronounce the conclusion which may appear just upon such a review.

It is unnecessary to comment on the particulars of the case as presented by the facts of this record. We have considered them carefully, and see no ground to disapprove the decree of the circuit judge, the effect of which was to cancel the transfer to Mr. Estes of the equity of redemption owned by Mr. Wells. We regard the testimony as sustaining the conclusion then reached, and accordingly affirm the judgment. BLACK, C. J., BRACE and MACFARLANE, JJ., concur.

PER CURIAM.—In pursuance of the foregoing opinion of BARCLAY, J., as modified, delivered in Division No. 1, which is adopted as the opinion of the Court in Banc, the judgment of the circuit court is affirmed. But in so doing the judgment is not to be taken as an adjudication upon any rights Mr. Estes may have, growing out of the relation of mortgagee to the property as it existed before the attempt to transfer Mr. Wells' equity by the deed thereby canceled. BRACE, C. J., BARCLAY, GANTT, SHERWOOD, MACFARLANE, BURGESS and ROBINSON, JJ., concurring.