## SCOTT HARDWARE COMPANY, Appellant, v. THOMAS A. RIDDLE, Respondent.

### St. Louis Court of Appeals, April 24, 1900.

1. **Change of Venue: COMMON PLEAS COURT OF CAPE GIRARDEAU: STATUTORY CONSTRUCTION.** Under section 19 of the Act establishing the Cape Girardeau Court of Common Pleas (vol. 2, page 2582, R. S. 1899) the circuit court of Stoddard county of its own volition does not have authority to change the venue of a cause from Stoddard county to the Cape Girardeau Court of Common Pleas.

2. **Jurisdiction of Subject-Matter.** Jurisdiction of the subject-matter can only be conferred by law (constitutional or statutory) and we must look to the law creating the court and conferring its jurisdiction to ascertain whether it has jurisdiction in a stated cause.

3. **Jurisdiction of Cape Girardeau Court of Common Pleas: STATUTORY CONSTRUCTION.** By section 2 of the Act creating the Cape Girardeau Court of Common Pleas it is given concurrent original jurisdiction in all civil actions at law, with the circuit court of Cape Girardeau county, within the county.

4. ———: ———. In the case at bar the subject-matter of the suit belongs to that class over which the common pleas court has jurisdiction and clearly comes within its jurisdictional powers.

5. ———: ———: ESTOPPEL: JURISDICTION OF PERSON. And the parties by agreeing that the venue should be changed to the common pleas court, voluntarily submitted themselves to its jurisdiction, when the venue was changed to that court, and having appeared in that court and submitted the issues to trial without objection, are estopped to question the jurisdiction of the court over their person.

6. **Mortgagor and Mortgagee: FRAUDULENT CONVEYANCE: TRUST.** Where the understanding between mortgagor and mortgagee at the time a mortgage is given, is that the mortgagee might sell the goods mortgaged and apply the proceeds thereof to the payment of debts other than the mortgage debt, the mortgage is a fraudulent conveyance and is made as if the agreement had been written in the mortgage, for the reason that it creates a secret trust in favor of the mortgagor.

Hardware Co. v. Riddle.

7. **Preferred Creditor:** FRAUDULENT CONVEYANCE: INSOLVENT DEBTOR. That an insolvent debtor, or one in failing circumstances may, with an honest view to pay an honest debt, prefer one creditor over another, though the effect be to hinder and delay the other creditors, is well-settled law in this state.

8. ———: ———: ———: MORTGAGEE. But if the purpose of such conveyance is to hinder and delay his other creditors, and the mortgagee takes with the same intent, the conveyance will be fraudulent, however honest the debt.

9. ———: ———: ———: FRAUD. And the giving of an unreasonable amount by an insolvent debtor to secure a preferred creditor is in itself a badge of fraud where the preferred creditor is aware of the insolvency of the debtor.

Appeal from the Cape Girardeau Court of Common Pleas.— Hon. *F. E. Burrough*, Judge.

REVERSED AND REMANDED.

No brief for appellant furnished reporter.

*N. A. Mozley* for respondent.

-- -- (1) The term fraud, as understood in the statutes concerning fraudulent conveyances, has the same meaning in the attachment law, and it is not necessary to show that the act originated in any design to commit fraud. In other words it is determined by its legal effect and the intention with which it is done cuts no figure. Reed v. Pelliteer, 28 Mo. 173; Bullene v. Barrett, 87 Mo. 185; Smith v. Ham, 51 Mo. App. 433; Noyes, Norman & Co. v. Cunningham, 51 Mo. App. 194. (2) It was the plain duty of the trial court to set aside the verdict of the jury and grant a new trial and that court having failed in the performance of its duty, as we see it, we ask this court to do what it should have done. In this case the physical facts surrounding it show unmistakably the imprint of fraud in Riddle's every act, and brands his own story upon the witness stand as too incredible for belief by

any person whose mind is free from prejudice and partiality. His own story furnishes the most cogent reasons for disbelieving it. If he advised appellant at the time he purchased these goods, as he says he did, that he was in a close place and would be unable to pay for them, why did he exhibit such extraordinary haste in conveying them to Fields? If his story is true he had nothing to fear; he had told appellant that he could not pay for the goods, if he got them and with this knowledge appellant had forced him to take them.

BLAND, P. J.—By agreement of parties the venue of the cause was changed from the Stoddard Circuit Court to the Cape Girardeau Court of Common Pleas. Section 19 of the act establishing the Cape Girardeau Court of Common Pleas (vol. 2, page 2582, R. S. 1899), provides that "all causes in which a change of venue shall be awarded by the circuit court of any other county to the county of Cape Girardeau shall be certified and transferred to the circuit court as heretofore." The award of the venue of the cause to the common pleas court was in violation of this section, and for this reason it is insisted that, that court did not acquire jurisdiction to hear and determine the cause. It is obvious that it was beyond the power of the Stoddard Circuit Court of its own volition to have awarded the change to the common pleas court, but the award was by the consent of the parties, and if it is within the power of parties to give a court jurisdiction by consent and by voluntarily appearing and submitting the issues made by their pleas to a court for trial, without objection, then the common pleas court acquired jurisdiction to hear and determine the cause. It is well-settled law that jurisdiction of the subject-matter can not be conferred by consent of parties. Stone v. Corbett, 20 Mo. 350; Dodson v. Scroggs, 47 Mo. 285; Abernathy v. Moore, 83 Mo. 65; State v. Bulling, 100 Mo. 87; Giesping v. Scho-

wengerdt, 24 Mo. App. 554; Collier v. Wilson, 56 Mo. App. 420; Ex parte O'Brien, 127 Mo. 477. Jurisdiction of the subject-matter can only be conferred by law (constitutional or statutory), and we must look to the law creating the court and conferring its jurisdiction, to ascertain whether it has jurisdiction in a stated cause. By section 2 of the act creating the Cape Girardeau Court of Common Pleas it is given concurrent original jurisdiction in all civil actions at law, with the circuit court of Cape Girardeau county, within the county. The subject-matter of the suit belongs to that class over which the common pleas court has jurisdiction, and clearly comes within its jurisdictional powers. State ex rel. v. Smith, 104 Mo. 419; State ex rel. v. Neville, 110 Mo. 345; Musick v. Railroad, 114 Mo. 309; Burke v. Kansas City, 118 Mo. 309; State ex rel. v. Elkins, 130 Mo. 90; Dawdy v. Wamble, 110 Mo. 280. The parties by agreeing that the venue should be changed to the common pleas court, voluntarily submitted themselves to its jurisdiction when the venue was changed to that court, and having appeared in that court and submitted the issues to trial without objection, are estopped to question the jurisdiction of the court over their person. Ivy v. Yancey, 129 Mo. 501; Squires v. Chillicothe, 89 Mo. 226; State v. Pancoast, 35 L. R. A. 518.

Suit by attachment, on the ground that defendant had fraudulently conveyed his property, so as to hinder and delay his creditors. Verdict and judgment for defendant on plea in abatement. The account sued on not being due when the suit was brought, there was judgment on the merits also for defendant.

The evidence is that defendant and one Francis bought on time payments a stock of hardware and groceries in July, 1894, of C. C. Field, the surviving partner of Field & Company, for which they agreed to pay $1,580. Notes and a chattel mortgage on the entire stock were given to Field to se-

cure the purchase price, and also a second deed of trust on a farm owned by defendant.   In a short time Francis retired from the business, leaving defendant in possession of the goods and to pay the debts.   On March 23, 1895, Field took from defendant a second chattel mortgage for $1,400 (the amount then remaining unpaid of the purchase price), on the entire stock as it then existed, and surrendered up the first chattel mortgage to defendant.   A few days before the giv-' ing of the second mortgage defendant had purchased of the plaintiff $430 worth of goods on credit, all of which were included in the second mortgage to Field.   On behalf of plaintiff the evidence tends to prove that at and before the execution of the second mortgage, it was mutually agreed between Field and defendant, that defendant might retain possession of the goods and sell them in the ordinary course of trade, and apply the proceeds to the purchase of new stock and in payment for stock already bought, so long as he would keep on hand a stock equal in value to the stock described in the mortgage, and that he, under this agreement, did sell the goods in the ordinary course of trade and out of the proceeds paid debts and purchased new goods.   The evidence for plaintiff also tends to prove that the defendant, falsely and fraudulently misrepresented his financial condition in order to obtain credit from plaintiff, and that he obtained the credit by making a false statement of the amount he owed and by concealing the fact that his entire stock was mortgaged.   There was evidence also tending to prove that the amount of security given by the second mortgage was more than what was necessary to pay the Field debt.

On the part of defendant the evidence tends to prove that both mortgages were given in good faith on the part of both defendant and Field, and that there was no agreement or understanding between Field and defendant that defendant might dispose of the goods in the ordinary course of

trade and use the proceeds to pay debts other than the one due Field or to buy new goods. Defendant also testified that he fully disclosed his financial condition to plaintiff's salesman before he made the purchase of it, and that the credit and goods were thrust upon him by the persistence of plaintiff's salesman.

The contention of appellant is that the court erred by giving the following instruction of its own motion, to wit:

"You are instructed that although you may believe and find from the evidence that the defendant T. A. Riddle, executed a chattel mortgage on the twenty-third day of March, 1895, to one C. C. Fields conveying the property levied upon by virtue of the writ of attachment herein and that said mortgage is and was regular upon its face yet if you further believe and find from the evidence that at the date of the execution of said mortgage or at any time since said date there was an understanding or agreement between the parties to said mortgage by which the mortgagor, the defendant herein, was authorized to sell the property, covered by said mortgage and apply the proceeds thereof to the payment of debts other than that mentioned in said mortgage (and that said C. C. Fields had knowledge thereof and permitted the same to be done), then you will find that said mortgage is void as a matter of fact and your verdict will be for plaintiff."

This instruction is somewhat involved. It is difficult to understand just what it means, as it speaks of an agreement or understanding between defendant and Fields, and then tells the jury that if Fields had knowledge of the agreement, etc. If Fields made the agreement, he certainly knew of it. If the instruction meant to tell the jury that if the agreement was made and was carried out by defendant and that Field had knowledge and permitted him to sell mortgaged goods and apply the proceeds to the payment of debts and the pur-

chase of new goods—it cast on plaintiff too great a burden. What the jury was to understand by the clause "and that C. C. Fields had knowledge thereof," it is difficult to comprehend. The entire clause in the instruction, which we have inclosed in brackets, should have been omitted. If the understanding between defendant and Fields, when the mortgage was given, was that defendant might sell the goods and apply the proceeds thereof to the payment of debts other than the mortgage debt, the mortgage was a fraudulent conveyance, and as much so as if the agreement had been written in the mortgage, for the reason that it created a secret trust in favor of the mortgagor. McDonald v. Hoover, 142 Mo. 484; Bank v. Bowers, 134 Mo. 432; Martin v. Estes, 132 Mo. 402; Roberts v. Barnes, 127 Mo. 405; Calumet Paper Company v. Haskell Show Ptg. Co., 144 Mo. 331; Dry Goods Company v. McLaughlin, 78 Mo. App. 578. Seemingly the instruction required the jury to find both that the agreement was made and that the defendant was carrying it out, with the knowledge and consent of Fields, before they could find the mortgage fraudulent. Either proposition if found to be true, would have authorized the jury to have found the mortgage fraudulent.

The plaintiff also complains of the following instruction, to wit:

"The court instructs the jury that a debtor may secure one creditor in preference to another or others, but in so doing he may not convey more property than is actually necessary to secure such debt, and if you find from the evidence that the value of the property conveyed by defendant herein to secure the debt due from him to C. C. Fields was more than was necessary to secure said debt and was for the purpose of hindering or delaying defendant's creditors, then you will find that such conveyance was fraudulent and your verdict will be for plaintiff."

That an insolvent debtor or one in failing circumstances may, with an honest view to pay an honest debt, prefer one creditor over another, though the effect be to hinder and delay the other creditors, is well-settled law in this state. But if the purpose of such conveyance is to hinder and delay his other creditors and the mortgagee takes with the same intent, the conveyance will be fraudulent however honest the debt; and the giving of an unreasonable amount by an insolvent debtor to secure a preferred creditor is in itself a badge of fraud where the preferred creditor is aware of the insolvency of his debtor. But if the amount is not excessive, that mere fact that it is in the opinion of witnesses something more than what is necessary to secure the debt, it is but slight evidence of a fraudulent intent. The instruction, like the former one, is double-barrelled. If the mortgage was given for the purpose of hindering and delaying creditors, it was fraudulent, regardless of the amount of security taken. If the amount was but slightly in excess of the amount reasonably necessary as security, this of itself was not sufficient to declare the transaction fraudulent. On the other hand, if the mortgagee, with knowledge of the mortgagor's insolvency, took an excessive amount of security, the law supplies or infers the intent to defraud, and pronounces the transaction fraudulent.

The judgment is reversed and the cause remanded to the Cape Girardeau Court of Common Pleas for retrial.

Judge *Bond* concurs; Judge *Biggs* absent.